WINGO, WARDEN *v.* WEDDING

No. 73–846.   Argued April 22, 1974—Decided June 26, 1974

*James M. Ringo,* Assistant Attorney General of Kentucky, argued the cause for petitioner. With him on the brief was *Ed W. Hancock,* Attorney General.

*Joseph G. Glass* argued the cause and filed a brief for respondent.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The question here is whether federal magistrates are authorized to conduct evidentiary hearings in federal habeas corpus cases. In 1968, Congress enacted the

---

*\*Evelle J. Younger,* Attorney General, *Jack R. Winkler,* Chief Assistant Attorney General, *S. Clark Moore,* Assistant Attorney General, and *Frederick R. Millar, Jr.,* and *Shunji Asari,* Deputy Attorneys General, filed a brief for the State of California as *amicus curiae* urging affirmance.

Federal Magistrates Act, 28 U. S. C. §§ 631–639, to upgrade and expand the former United States commissioner system. The Act authorizes magistrates to exercise all powers formerly exercised by United States commissioners,[1] and also, as a means of relieving the caseload burden of the federal district judges, empowers magistrates to try minor offenses when all parties consent,[2] and to perform such additional duties assigned by the district court as are "not inconsistent with the Constitution and laws of the United States."[3]   Pursuant to

---

[1] Commissioners had been empowered by the Federal Rules of Criminal Procedure to give oaths (Rule 3); issue arrest warrants (Rule 4); conduct preliminary examinations of arrestees (Rule 5); issue subpoenas (Rule 17); issue warrants of removal to another district (Rule 40); and release defendants on bail (Rule 46). In addition, commissioners were authorized to try persons accused of petty offenses (defined by 18 U. S. C. § 1 (3) as crimes for which the penalty does not exceed imprisonment for six months or a fine of not more than $500 or both) committed within the confines of federal enclaves, 62 Stat. 830. In civil cases commissioners were limited to administering oaths and taking bail, acknowledgments, affidavits, and depositions.   62 Stat. 917.

[2] Unlike the more restricted criminal trial jurisdiction of the former commissioners, see n. 1, *supra,* the authority of magistrates extends to minor offenses committed anywhere within the judicial district and includes crimes punishable by imprisonment not exceeding one year, or a fine of not more than $1,000, or both.

[3] The Federal Magistrates Act, 28 U. S. C. § 636 (b), provides:
"(b) Any district court of the United States, by the concurrence of a majority of all the judges of such district court, may establish rules pursuant to which any full-time United States magistrate, or, where there is no full-time magistrate reasonably available, any part-time magistrate specially designated by the court, may be assigned within the territorial jurisdiction of such court such additional duties as are not inconsistent with the Constitution and laws of the United States. The additional duties authorized by rule may include, but are not restricted to—
"(1) service as a special master in an appropriate civil action

the Act, the Judges of the United States District Court for the Western District of Kentucky amended Local Rule 16 of that court to provide:

"In addition to submitting such other reports and recommendations as may be required concerning petitions for writs of habeas corpus from state prisoners the full-time Magistrate is directed to schedule and hear evidentiary matters deemed by the Magistrate to be necessary and proper in the determination of each such petition, and to report thereon with an appropriate recommendation for the disposition thereof to the District Judge having jurisdiction of the case. The Magistrate shall cause the testimony of such hearing to be recorded on suitable electronic sound recording equipment. He shall submit his proposed findings of fact and conclusions of law to the proper Judge for his consideration, copies of which shall be provided at that time to the petitioner and respondent, and the Magistrate shall expeditiously transmit the proceedings, including the recording of the testimony, to the proper District Judge. Upon written request of either party, filed within ten days from the date such is so transmitted to the District Judge having jurisdiction thereof, the District Judge shall proceed to hear the recording of the testimony given at the evidentiary hearing and give it de novo consideration."

---

pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts;

"(2) assistance to a district judge in the conduct of pretrial or discovery proceedings in civil or criminal actions; and

"(3) preliminary review of applications for posttrial relief made by individuals convicted of criminal offenses, and submission of a report and recommendations to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing."

Respondent is a state prisoner whose petition for federal habeas corpus relief was assigned by the District Court to a full-time Magistrate for processing under the rule. The part of the rule challenged here is that which directs the full-time magistrate "to schedule and hear evidentiary matters [to be electronically recorded] deemed by the Magistrate to be necessary and proper in the determination of . . . such petition, and to report thereon with an appropriate recommendation for the disposition thereof to the District Judge [who] . . . [u]pon . . . request . . . shall proceed to hear the recording of the testimony . . . and give it de novo consideration." The question is whether this portion of the rule is invalid because "inconsistent with the . . . laws of the United States" within the meaning of the Federal Magistrates Act, 28 U. S. C. § 636 (b), or because § 636 (b) itself should be construed to preclude district courts from assigning such duties to magistrates.

## I

Respondent, Carl James Wedding, is a prisoner in the Kentucky State Penitentiary serving a life sentence imposed in 1949 by the Webster Circuit Court, Commonwealth of Kentucky, after a plea of guilty to a charge of willful murder. Wedding filed this petition for habeas corpus in 1971. After the Court of Appeals for the Sixth Circuit reversed the initial dismissal of his petition, 456 F. 2d 245 (1972), and remanded for an evidentiary hearing, the District Court invoked Local Rule 16 and assigned the case to a full-time Magistrate to hold the hearing. Wedding promptly moved that the Magistrate be disqualified and the hearing be reassigned to a District Judge, on the ground that the Federal Magistrates Act did not authorize district courts to assign to magistrates the duty to hold habeas corpus evidentiary hearings. When the District Court denied the motion, the Magistrate pro-

ceeded with the hearing, and electronically recorded all testimonial evidence as required by Local Rule 16. Thereafter, the Magistrate transmitted the recording of the testimony to the District Judge and submitted written findings of fact and conclusions of law recommending that the petition be dismissed.

Wedding moved that the District Court give the matter a *de novo* hearing. The District Judge's response was to listen, as authorized by Local Rule 16, to the recording of the hearing before the Magistrate. On this basis and the Magistrate's findings and conclusions, the District Court entered an order dismissing respondent's petition.

On appeal, Wedding renewed his challenge to Local Rule 16, relying upon *Holiday* v. *Johnston,* 313 U. S. 342 (1941). *Holiday* was also a federal habeas corpus case. There, after determining that the petition for writ of habeas corpus alleged facts which, if proved, would entitle the petitioner to relief, the District Judge issued a writ compelling the respondent to produce the petitioner before a designated United States Commissioner. The Commissioner held an evidentiary hearing at which the petitioner testified and the respondent submitted the depositions of two witnesses. On the basis of the evidence received, the Commissioner made findings of fact and stated conclusions of law recommending that the writ be denied. After hearing oral argument on the Commissioner's report, the District Judge entered an order discharging the writ.

This Court reversed, holding that the factfinding procedure employed failed to conform to Congress' express command in the Habeas Corpus Act that "[t]he *court, or justice, or judge* shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice require." Rev. Stat. § 761,

28 U. S. C. § 461 (1940 ed.) (emphasis added). The Court held that the statute plainly accords a prisoner the right of testifying before a *judge,* stating:

> "One of the essential elements of the determination of the crucial facts is the weighing and appraising of the testimony. Plainly it was intended that the prisoner might invoke the exercise of this appraisal by the judge himself. We cannot say that an appraisal of the truth of the prisoner's oral testimony by a master or commissioner is, in the light of the purpose and object of the proceeding, the equivalent of the judge's own exercise of the function of the trier of the facts.
>
> .          .          .          .          .
>
> "The District Judge should himself have heard the prisoner's testimony and, in the light of it and the other testimony, himself have found the facts and based his disposition of the cause upon his findings." *Holiday* v. *Johnston, supra,* at 352, 353–354.

Wedding contended that neither the text nor legislative history of the Federal Magistrates Act evidences a congressional intent to overrule *Holiday.* The Court of Appeals agreed and accordingly "vacate[d] the judgment of dismissal and remand[ed] the case with instructions that the [District] Court itself hold an evidentiary hearing on [Wedding's] constitutional claims." 483 F. 2d 1131, 1137 (CA6 1973). We granted certiorari, 414 U. S. 1157 (1974). We affirm.[4]

---

[4] We thus agree with the Court of Appeals that this case does not require resolution of the question whether Congress constitutionally may enact legislation vesting authority, pursuant to rule or order of court, in magistrates to hold evidentiary hearings on habeas corpus petitions. We indicate no views as to the validity of investing such authority in a magistrate or other officer "outside the pale of Article III of the Constitution." 483 F. 2d 1131, 1133 n. 1 (CA6 1973).

## II

Under our constitutional framework, the "great constitutional privilege" of habeas corpus, *Ex parte Bollman* 4 Cranch 75, 95 (1807) (Marshall, C. J.), has historically provided "a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." *Fay* v. *Noia*, 372 U. S. 391, 401–402 (1963). More often than not, claims of unconstitutional detention turn upon the resolution of contested issues of fact. Accordingly, since the Judiciary Act of February 5, 1867, c. 28, § 1, 14 Stat. 385, Congress has expressly vested plenary power in the federal courts "for taking testimony and trying the facts anew in habeas hearings . . . ." [5] *Fay* v. *Noia, supra,* at 416. See also *Townsend* v. *Sain,* 372 U. S. 293, 312 (1963).

In connection with the 1948 revision and recodification of the Judicial Code,[6] Rev. Stat. § 761, construed in *Holiday,* and other procedural provisions of the Habeas Corpus Act were consolidated into 28 U. S. C. § 2243. The pertinent portion covering habeas corpus evidentiary hearings provides that "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." The Revisers thus deleted some

---

[5] The relevant portion of the Judiciary Act of February 5, 1867, c. 28, § 1, 14 Stat. 385, provides that the "court or judge shall proceed in a summary way to determine the facts of the case, by hearing testimony and the arguments of the parties interested, and if it shall appear that the petitioner is deprived of his or her liberty in contravention of the constitution or laws of the United States, he or she shall forthwith be discharged and set at liberty."

[6] 62 Stat. 869.

words from Rev. Stat. § 761, but the Revisers' Notes accompanying § 2243, together with the reports of the Committee of the Judiciary of the Senate,[7] and of the House,[8] make abundantly clear that the word changes and omissions in Rev. Stat. § 761 were intended only as changes in form.[9]

Accordingly, the construction of § 2243 has been that given § 761 in *Holiday*. *United States* v. *Hayman*, 342 U. S. 205, 213 n. 16 (1952); *Brown* v. *Allen*, 344 U. S. 443, 462–463 (1953). The Court held in the latter case:

> "A *federal judge* on a habeas corpus application is required to 'summarily hear and determine the facts, and dispose of the matter as law and justice require,' 28 U. S. C. § 2243. This has long been the law. R. S. § 761, old 28 U. S. C. § 461." *Ibid.* (emphasis added).

### III

Our inquiry is thus narrowed to the question whether the Federal Magistrates Act changed the requirement of § 2243 that federal judges personally conduct habeas corpus evidentiary hearings. Certainly nothing in the text

---

[7] S. Rep. No. 1559, 80th Cong., 2d Sess., 2 (1948).

[8] H. R. Rep. No. 308, 80th Cong., 1st Sess., A178 (1947).

[9] See also J. Moore, Commentary on the U. S. Judicial Code 436 n. 78 (1949); *Payne* v. *Wingo*, 442 F. 2d 1192, 1194 (CA6 1971). Had any substantive change in the meaning of Rev. Stat. § 761, as construed in *Holiday* v. *Johnston*, been intended, the Revisers' Notes would have called attention to the change. William W. Barron, the Chief Reviser of the Code, explained: "[N]o changes of law or policy will be presumed from changes of language in revision unless an intent to make such changes is clearly expressed. Mere changes of phraseology indicate no intent to work a change of meaning but merely an effort to state in clear and simpler terms the original meaning of the statute revised." Barron, The Judicial Code 1948 Revision, 8 F. R. D. 439, 445–446. See also S. Rep. No. 1559, 80th Cong., 2d Sess., 2 (1948); H. R. Rep. No. 308, 80th Cong., 1st Sess., 7 (1947).

or legislative history of the Magistrates Act suggests that Congress meant to change that requirement.[10] Rather, both text and legislative history plainly reveal a congressional determination to retain the requirement. For, although the Act gives district judges broad authority to assign a wide range of duties to magistrates, Congress carefully circumscribed the permissible scope of assignment to only "such additional duties as are *not inconsistent with the Constitution and laws of the United States.*" 28 U. S. C. § 636 (b) (emphasis added). And in defining assignable duties, Congress decreed that the duty of holding evidentiary hearings was not assignable. This clearly emerges from the legislative history of subsection (3) of § 636 (b), which provides:

> "(3) preliminary review of applications for posttrial relief made by individuals convicted of criminal offenses, and submission of a report and recommendations to facilitate the decision of the district judge having jurisdiction over the case *as to whether there should be a hearing.*" (Emphasis added.)

That legislative history reveals that the Judicial Conference of the United States objected to successive phrasings of subsection (b) (3) until it was phrased to make clear that the authority given district courts to assign duties to magistrates did not include authority to hold evidentiary hearings on applications for posttrial relief.[11]

---

[10] A full discussion of the legislative history of the Federal Magistrates Act will be found in *TPO, Inc.* v. *McMillen,* 460 F. 2d 348 (CA7 1972).

[11] Where Congress gave magistrates authority to conduct hearings, the authority was express and circumscribed with procedural safeguards. Thus 28 U. S. C. § 636 (a) (3) gives magistrates jurisdiction to conduct trials for minor offenses, but 18 U. S. C. § 3401 provides that any person charged with a minor offense may elect to be tried

The original draft of the subsection [12] had proposed that magistrates' duties include

> "(3) preliminary consideration of applications for post-trial relief made by individuals convicted of criminal offenses."

But because that language was susceptible of the interpretation that magistrates might conduct evidentiary hearings, the Judicial Conference of the United States objected to it.[13] Accordingly, the subsection was rewritten to provide for

> "(3) preliminary review of applications for post-trial relief made by individuals convicted of criminal offenses, and submission of a report and recommendations to facilitate the decision of the district judge having jurisdiction over the case . . . ."

The Committee on the Administration of the Criminal Law of the Judicial Conference objected that the revision did not "make it clear that it is the judge's responsibility to make the ultimate decisions and to hold hearings on such applications, rather than that of the

---

by a district judge. Title 28 U. S. C. § 636 (b) (1) authorizes magistrates to serve as special masters—which frequently involves the conduct of hearings—but makes that service subject to the Federal Rules of Civil Procedure, which include the restrictions of Rule 53 (b) that "reference to a master shall be the exception and not the rule." See Note, Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1189 n. 229 (1970).

[12] S. 3475, Federal Magistrates Act of 1966, 89th Cong., 2d Sess. (1966).

[13] See the Report of the Committee on the Administration of the Criminal Law, adopted by the Judicial Conference in September 1966, reprinted in the Hearings on S. 3475 and S. 945 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 89th Cong., 2d Sess. (1966) and 90th Cong., 1st Sess. (1967), pp. 241j, 241n.

magistrate." [14] The Committee therefore recommended the addition of the phrase "as to whether there should be a hearing" immediately following the word "case." [15] The proposed addition was made,[16] and subsection (b) (3) in its present form was enacted. Thus, although § 636 (b) provides that "additional duties authorized by rule may include, but are not restricted to," duties defined in subsection (b) (3), the legislative history of the subsection compels the conclusion that Congress made a deliberate choice to preclude district courts from assigning magistrates the duty to hold evidentiary hearings.

We conclude that, since § 2243 requires that the District Judge personally hold evidentiary hearings in federal habeas corpus cases, Local Rule 16, insofar as it authorizes the full-time magistrate to hold such hearings, is invalid because it is "inconsistent with the . . . laws of the United States" under § 636 (b). We conclude further that the Rule is to that extent invalid because, as we construe § 636 (b), that section itself precludes district judges from assigning magistrates the duty of conducting evidentiary hearings.[17] Review by magistrates of applications for post-trial relief is thus limited to review for the purpose of proposing, not holding, eviden-

---

[14] See the Report of the Committee on the Administration of the Criminal Law, adopted by the Judicial Conference in March 1967, reprinted in the Hearings on S. 3475 and S. 945 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 89th Cong., 2d Sess. (1966) and 90th Cong., 1st Sess. (1967), pp. 244, 245.

[15] *Ibid.*

[16] S. 945, Federal Magistrates Act of 1967, 90th Cong., 1st Sess. (1967).

[17] See Shapiro, Federal Habeas Corpus: A Study in Massachusetts, 87 Harv. L. Rev. 321, 364–365 (1973); Note, Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1188–1189 (1970).

tiary hearings.[18]  In connection with the preliminary review whether or not to propose that the district judge hold an evidentiary hearing, we agree that magistrates may receive the state court record and all affidavits, stipulations, and other documents submitted by the parties.[19]  Magistrates are prohibited only from conducting the actual evidentiary hearings.[20]

The invalidity of Local Rule 16 is not cured by its provision that the "District Judge shall proceed to hear

---

[18] "A qualified, experienced magistrate will, it is hoped, acquire an expertise in examining these [post-conviction review] applications and summarizing their important contents for the district judge, thereby facilitating his decisions.  Law clerks are presently charged with this responsibility by many judges, but judges have noted that the normal 1-year clerkship does not afford law clerks the time or experience necessary to attain real efficiency in handling such applications."  S. Rep. No. 371, 90th Cong., 1st Sess., 26 (1967).

[19] To the extent that *O'Shea* v. *United States,* 491 F. 2d 774 (CA1 1974), and *Noorlander* v. *Ciccone,* 489 F. 2d 642 (CA8 1973), suggest that magistrates may also accept oral testimony, provided that each party has the right to a *de novo* hearing before the district judge, we disagree.  Such a procedure is precluded by both § 2243 and § 636 (b).

[20] Since under § 636 (b) district judges may call upon magistrates to relieve them of most other details of the processing of habeas corpus applications, it does not appear that judges will be significantly overburdened by the requirement that they personally conduct evidentiary hearings.  Indeed, data from the Administrative Office of the United States Courts indicate that very few habeas corpus cases ever reach the evidentiary hearing stage.  In 1973, of the 10,800 prisoner petitions filed for habeas corpus or as 28 U. S. C. § 2255 motions to vacate sentence, less than 5%, or approximately 530, necessitated evidentiary hearings.  See Report of the Director of the Administrative Office of United States Courts, Table C–2, p. 325, Table C–8, p. 383 (1973).  When hearings were required, 88% were completed in one day or less.  *Id.,* at 383.  Thus, among the 400 District Judges, the burden of evidentiary hearings averages less than 1.5 hearing days per judge per year.  To the extent that the 80 active Senior District Judges also participate in habeas corpus cases, the hearing burden upon each district judge is further reduced.

the recording of the testimony given at the evidentiary hearing and give it de novo consideration." *Holiday* reasoned that the command of § 761, now § 2243, was designed by Congress in recognition that "[o]ne of the essential elements of the determination of the crucial facts is the weighing and appraising of the testimony." 313 U. S., at 352. "To experienced lawyers it is commonplace that the outcome of a lawsuit—and hence the vindication of legal rights—depends more often on how the factfinder appraises the facts than on a disputed construction of a statute or interpretation of a line of precedents. Thus the procedures by which the facts of the case are determined assume an importance fully as great as the validity of the substantive rule of law to be applied." *Speiser* v. *Randall*, 357 U. S. 513, 520 (1958). Congress, *Holiday* held, "[p]lainly . . . intended that the prisoner might invoke . . . appraisal by the judge himself." In that circumstance, we "cannot say that an appraisal of the truth of the prisoner's oral testimony" based on listening to a recording of it, "is, in the light of the purpose and object of the proceeding, the equivalent of the judge's own exercise of the function of the trier of the facts." 313 U. S., at 352.

*Affirmed.*

MR. CHIEF JUSTICE BURGER, with whom MR. JUSTICE WHITE joins, dissenting.

The Court today reads two separate statutes and our prior cases to reach a result contrary to the purposes underlying the enactment in 1968 of the Federal Magistrates Act, 28 U. S. C. § 631 *et seq.,* and to the conclusion of every other Court of Appeals which has had occasion to consider the matter.[1]

---

[1] Two Circuits have ruled that federal magistrates may conduct evidentiary hearings in federal habeas corpus cases, *O'Shea* v. *United*

The Federal Magistrates Act was both "designed to create an upgraded lower tier judicial office," S. Rep. No. 371, 90th Cong., 1st Sess., 11 (1967), and "intended . . . to cull from the ever-growing workload of the U. S. district courts matters that are more desirably performed by a lower tier of judicial officers." H. R. Rep. No. 1629, 90th Cong., 2d Sess., 12 (1968). The Court's holding that federal magistrates may not conduct evidentiary hearings in federal habeas corpus cases is both inconsistent with the new status of magistrates and deputy magistrates,[2] and serves to defeat the objective of the Act,

States, 491 F. 2d 774, 778 (CA1 1974); Noorlander v. Ciccone, 489 F. 2d 642, 648 (CA8 1973); cf. Campbell v. U. S. District Court, 501 F. 2d 196, 205 (CA9 1974), while two Circuits have assumed magistrates have that power, United States ex rel. Gonzalez v. Zelker, 477 F. 2d 797, 798 (CA2 1973); Parnell v. Wainwright, 464 F. 2d 735, 736 (CA5 1972).

[2] The Court makes clear, ante, at 473 n. 18, that it sees the function of the magistrate in dealing with habeas corpus petitions as being no more than that previously performed by law clerks. As Chief Judge Theodore Levin, of the Eastern District of Michigan, testified before the Senate Judiciary Committee's Subcommittee on Improvements in Judicial Machinery, which under the chairmanship of Senator Joseph D. Tydings began the investigative hearings in 1965 which led to the enactment of the Act three years later, law clerks are not overworked, and are better able to perform such tasks. "In any event, this is a somewhat tedious job . . . and is not a function likely to entice a seasoned and competent lawyer to accept a magistrate's job." Hearings on S. 3475 and S. 945, 89th Cong., 2d Sess. (1966) and 90th Cong., 1st Sess. (1967), p. 61 (hereinafter Hearings). The Act specifically sought to make "the position [of magistrate] more attractive to highly qualified individuals." S. Rep. No. 371, 90th Cong., 1st Sess., 11 (1967). The Department of Justice agreed that such a limited function would be inconsistent with the Act's purpose, Hearings 130, and Chief Judge Robert C. Belloni and Dean Robert B. Yegge have noted that the magistrates "should not be simply high-paid law clerks." Reports of the Conference for District Court Judges, 59 F. R. D. 203, 221 (1973). To limit a magistrate to a law clerk's function surely undercuts what Senator Tydings

described by Senator Tydings, its principal sponsor, see n. 2, *supra,* "to provide district judges with more time to devote to the actual trial of cases and the writing of opinions." [3]  Hearings 3.

## I

In its two-stage analysis, the Court finds first that under the terms of the Act it would be "inconsistent with

stated to be "[t]he first goal of the Magistrates Act . . . to [give the magistrate] qualifications and a stature higher than those of the present U. S. commissioner." Hearings 26.

[3] No one would dispute the heavy burden on district courts represented by the applications for habeas corpus writs they receive, a large volume of which has been long recognized as "repetitious and patently frivolous." *United States* v. *Hayman,* 342 U. S. 205, 212 (1952) (footnote omitted). The Court would minimize the burden of these applications at the evidentiary hearing stage, *ante,* at 473 n. 20, but the beguiling simplicity of its statistical analysis obscures reality and is antagonistic to the interests of habeas petitioners. First, to average hearing days per judge per year evenly across the country fails to recognize the uneven number of habeas corpus applications received by the various district courts. In his testimony at the Senate hearings on the bill Chief Judge Edward S. Northrop, of the District of Maryland, reflected the unevenness experienced by his court, which at one time handled more "State prisoner habeas corpus petitions . . . than any other district in the country." Hearings 52. Clearly Chief Judge Northrop's burden would have exceeded "1.5 hearing days . . . per year." Second, the habeas corpus applications which ultimately reach the hearing stage do not represent all those which might warrant a hearing. Senator Tydings stated:

"We say that the magistrate should be able to [hold] plenary, discovery hearings. Now, what happens . . . as a practical matter, you get no hearings. The law clerk reviews the papers . . . so we are giving the individual [petitioner] actually an opportunity . . . for more consideration than he gets now." *Id.,* at 113.

Finally, even if no more applications would warrant an evidentiary hearing, given the other burdens on district judges those applications which would warrant hearings would receive more prompt attention if magistrates were to hold them. The virtues of speedy justice need not be elaborated here.

the . . . laws of the United States," 28 U. S. C. § 636 (b), to permit magistrates to conduct evidentiary hearings in habeas corpus cases. This is so, it is said, because a procedural provision of the Habeas Corpus Act, Rev. Stat. § 761, was construed 33 years ago, long before the enactment of the Magistrates Act, to confine that function to judges alone. *Holiday* v. *Johnston,* 313 U. S. 342 (1941). The 1948 revision and recodification of the Judicial Code, which incorporated Rev. Stat. § 761 into 28 U. S. C. § 2243, is held to have carried forward this limitation despite a critical language change. *United States* v. *Hayman,* 342 U. S. 205 (1952); *Brown* v. *Allen,* 344 U. S. 443 (1953). Neither the new statute, its drafting history, nor these latter cases, support the Court's conclusion.

Section 2243 did, as the Court notes, import into its terms Rev. Stat. § 761, both of which provisions set forth in part what authority shall hear and determine the facts involved in an application for a writ of habeas corpus. And § 2243 changed the language of Rev. Stat. § 761, which originally read that the authority was to be the "court, or justice, or judge," now to read simply the "court." But the Court fails to note that § 2243 incorporated a second provision from the Habeas Corpus Act, Rev. Stat. § 755, which in part set forth what authority shall issue the writ of habeas corpus for which application was made. The authority to issue the writ set forth in Rev. Stat. § 755 was identical to that set forth in Rev. Stat. §761 to hear and determine the facts: the "court, or justice, or judge." Unlike the language of Rev. Stat. § 761, however, the quoted language of Rev. Stat. § 755 was incorporated into § 2243 substantially unchanged; under the present statute, it is the "court, justice or judge" who shall issue the writ.

Congress sought to make certain that only a "court, justice or judge" could issue the writ; but by changing

the authority to hear the facts from a "court, or justice, or judge" to, simply, a "court," Congress must have intended to broaden the authority of the court, at least to the extent of permitting delegation to a magistrate to perform the preliminary hearing function, subject always to the approval of a district judge.[4] To read the language change in any other way would impute to Congress an intent to alter statutory language, the meaning of which had already been finally determined by this Court, *Holiday* v. *Johnston, supra,* without the knowledge that the alteration would raise interpretive difficulties. Moreover, to change the language of Rev. Stat. § 761, but not to change that of Rev. Stat. § 755, cannot be said, as the Court does, *ante,* at 469 n. 9, to be a "[m]ere change of phraseology," for such changes were undertaken only for purposes of uniformity. If, as Charles J. Zinn, counsel to the Law Revision Committee which revised the Judicial Code, testified, "we have changed the language to get a uniform style," [5] then within the *same* statutory provision, surely Congress would have made only "courts" able to issue writs, as well as hear the facts of the claim.

Nor do the cases cited by the Court, *ante,* at 469, support its interpretation of § 2243. *Brown* v. *Allen, supra,* is plainly inapposite. The segment of *Brown* quoted by the Court is relevant to *Brown's* discussion of whether a petitioner under 28 U. S. C. § 2254 had a right to a plenary hearing although an earlier petition of his which presented substantially the same federal issues was refused in the state court. When the Court quotes from *Brown:*

---

[4] As noted in Part II, *infra,* it is not urged by anyone that the magistrate may finally decide facts after conducting an evidentiary hearing. That ultimate decision is, without question, one reserved to the district judge alone.

[5] Hearings on H. R. 1600 and H. R. 2055 before Subcommittee No. 1 of the House Committee on the Judiciary, 80th Cong., 1st Sess., 40 (1947).

"This has long been the law," *ante,* at 469, it is referring to what the *Brown* Court called the "general rule" approved in *Salinger* v. *Loisel,* 265 U. S. 224, 231 (1924). *Brown,* 344 U. S., at 463. *Salinger* in turn makes it clear that the "general rule" which has "long been the law" has nothing whatever to do with who may hear and determine the facts on an application for a writ of habeas corpus. Rather, it pertains only to that portion of § 2243 which *Brown* itself quoted, 344 U. S., at 462, and which *Salinger* also quoted, 265 U. S., at 231, that is, "to dispose of [the matter or party] as law and justice [may] require." In *Salinger,* this rule meant each application for a writ of habeas corpus could be disposed of in the exercise of judicial discretion, which could in part give controlling weight to "a prior refusal [by a federal court] to discharge on a like application." *Ibid.* In *Brown,* that rule was extended under certain circumstances to a prior state court refusal to issue the writ, in support of the Court's conclusion there that a § 2254 petitioner had no right to a plenary hearing on his application for the writ. The rule the Court relies on today is thus one of discretion to hold an evidentiary hearing "as law and justice require," which has no bearing on what official shall conduct the hearing once a decision is made to hold one. *Brown* is thus no authority for the proposition that the same limitation *Holiday* placed on Rev. Stat. § 761 ("court, or justice, or judge") applies to § 2243 ("court") enacted after *Holiday.*

The Court also relies upon *United States* v. *Hayman, supra,* to support its interpretation of § 2243. The issue in *Hayman* had nothing to do with who shall hear and determine facts upon an application for a writ of habeas corpus. Rather, the Court there was concerned solely with the question whether a district court may, upon an evidentiary hearing, decide factual issues pre-

sented by a motion under 28 U. S. C. § 2255, where the movant was not notified and was not present. In the context of discussing an earlier case which had held that a district court must decide material issues of fact by taking evidence, not by *ex parte* affidavits, *Hayman* dropped a footnote stating simply "[n]or can the factual issues be heard before a commissioner," citing *Holiday, supra.* 342 U. S., at 213 n. 16. Not only was this footnote completely irrelevant to the issue in *Hayman,* its citation to *Holiday* for support, without further discussion, makes manifest that the Court did not consider the effect of the subsequent language change in § 2243 on the statute (Rev. Stat. § 761) which *Holiday* construed. The fulfillment of the purposes of the Federal Magistrates Act should not hang on such a slim reed.

## II

Even assuming that § 2243 was intended to carry forward the limitation of *Holiday*'s interpretation of its predecessor, by enacting the Magistrates Act, and particularly § 636 (b) thereof, Congress made clear its intent to eliminate that restriction. Thus, while *Hayman* may speak in terms of a "commissioner," Congress changed not only the title of that office, but also the qualifications for and the functions of the office.

Section 636 (b) permits federal magistrates to "be assigned . . . such additional duties as are not inconsistent with the Constitution and laws of the United States." The section then sets forth in three subdivisions certain duties which district courts may authorize by rule, but the duties "are not restricted to" those set forth. The third illustrative subdivision provides that district courts may authorize the additional duty of

"preliminary review of applications for posttrial relief made by individuals convicted of criminal of-

fenses, and submission of a report and recommendations to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing." 28 U. S. C. § 636 (b)(3).

Subdivision (3), suggesting additional duties that may be assigned to a magistrate in connection with federal habeas corpus cases, does not by its terms permit magistrates to conduct evidentiary hearings, but that subdivision is merely illustrative, not exclusive.

"The mention of these three categories is intended to illustrate the general character of duties assignable to magistrates under the act, rather than to constitute an exclusive specification of duties so assignable." S. Rep. No. 371, 90th Cong., 1st Sess., 25 (1967).

The House Report virtually tracks the language of the Senate Report. H. R. Rep. No. 1629, 90th Cong., 2d Sess., 19 (1968). Thus, there being no constitutional barrier to permitting magistrates to conduct evidentiary hearings,[6] nor any other legal barrier, see Part I, *supra,* § 636 (b) enables district courts, as did the District Court here, to establish rules which so permit.

Assuming, *arguendo,* that § 2243 does constitute a possible legal barrier to such rules, the legislative history of the Act reveals Congress to have intended the elimination of that barrier. The Court determines, in the second stage of its analysis, *ante,* at 469–473, that Congress intended the opposite result, but in this matter the Court's perception is less than discriminating. The linchpin of the Court's argument is the drafting evolution of the terms of subdivision (3), quoted above. In the change of language from preliminary "consideration" to preliminary

---

[6] No such barrier is suggested by the Court today, and properly framed, district court rules which so permit would not contravene the constitutional rights of federal habeas corpus petitioners. See Part III, *infra.*

"review," [7] and in the addition of "as to whether there should be a hearing," [8] the Court finds an intent to bar magistrates from conducting a hearing. But the language changes in the subdivision were made only due to a fear that magistrates would be thought to have been given final adjudicatory power, not to preclude them from conducting hearings when the district judges retained such power.[9] Indeed, the latter was specifically intended. As the Senate Report stated, § 636 (b)

"contemplates assignments to magistrates under cir-

---

[7] The two words were in fact used interchangeably in the legislative history. When the draft bill (S. 3475) used the word "consideration," the Subcommittee Staff Memorandum in support of the bill used the word "review." Hearings 34. When the draft bill was changed to use the word "review," the Senate Report accompanying the new bill (S. 945) used the word "consideration." S. Rep. No. 371, 90th Cong., 1st Sess., 8 (1967).

[8] Despite the addition of this language, the House Report, in setting forth the enumerated examples of § 636 (b), stated of subdivision (3) only that "[m]agistrates may also be assigned the function of reviewing and reporting to district judges upon applications for postconviction relief." H. R. Rep. No. 1629, 90th Cong., 2d Sess., 19 (1968). No limitation on the nature of the review or report was indicated. The language of the Senate Report also made no reference to decisions whether there should be hearings. S. Rep. No. 371, *supra,* at 26.

[9] The Court twice makes reference, *ante,* at 471 n. 11, and 472 n. 17, to Note, Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1188–1189, and n. 229 (1970), in support of its position. Both references are mistakenly addressed to final decisionmaking power, not the power to conduct hearings where the district judge makes the ultimate decision. The Note itself concedes that "[i]t is possible to argue [under § 636 (b)] that a plan to have magistrates actually hear cases is valid under the Act." *Id.,* at 1189 n. 229. It then argues the other way in reference to matters as to which magistrates have final power of decision. See 28 U. S. C. § 636 (a)(3). That is the only power of magistrates circumscribed by the procedures to which the Court refers, *ante,* at 470–471, n. 11.

cumstances where the ultimate decision of the case is reserved to the judge . . . ." S. Rep. No. 371, 90th Cong., 1st Sess., 26 (1967).

The concern about enabling magistrates to make the ultimate decision found early expression in the Senate hearings on the bill in a colloquy between Senator Tydings and then Assistant Attorney General Vinson. Mr. Vinson ultimately revealed his real concern in a letter to the Subcommittee that subdivision (3) as originally drafted would give the power of ultimate decision to the magistrate: "[I]f preliminary consideration is intended to involve adjudication, it should be handled by an Article 3 Judge." Hearings 130. That the Senate viewed Mr. Vinson's objections in this light is made clear by Senator Tydings' testimony in the hearings before a subcommittee of the House Judiciary Committee. Hearings on S. 945 et al. before Subcommittee No. 4 of the House Committee on the Judiciary, 90th Cong., 2d Sess., 72 (1968).

In response to this objection, Senator Tydings stated to Mr. Vinson at the Senate hearings:

"We wouldn't intend for the final decision to be made by the magistrate. *But we would intend that . . . the magistrate* [be able to] *hold a preliminary* [habeas] *hearing* . . . . We certainly intend that." Hearings 112. (Emphasis added.)

Numerous other witnesses at the Senate hearings urged that the magistrates be permitted to hold hearings. See,

---

To the extent the Court goes beyond the Note and argues that magistrates' service as special masters, 28 U. S. C. § 636 (b)(1), is limited by Fed. Rule Civ. Proc. 53 (b), the early strictures upon employing special masters were developed before the existence of the judicial office of magistrate and arguably should not be applied to that new office. See generally Comment, An Adjudicative Role for Federal Magistrates in Civil Cases, 40 U. Chi. L. Rev. 584 (1973).

*e. g., id.,* at 52 (Chief Judge Northrop, *supra,* n. 3); *id.,* at 94 (Chief Judge Walter E. Hoffman, of the Eastern District of Virginia).

As the Court points out, *ante,* at 470–471, the Judicial Conference objected to the original draft bill (S. 3475), but it did not originally object to subdivision (3), as the Court states. Instead, the Conference objected to § 636 (b) altogether, fearing it so broad as to be subject to constitutional attack. Although not specified, it seems clear that by speaking in terms of "delegation" the Conference initially shared Mr. Vinson's concern about delegating the ultimate decisionmaking power of Art. III judges. Hearings 241n. The Judicial Conference therefore recommended both a modified version of § 636 (b), and the complete elimination of all three subdivisions. *Ibid.* When the revised draft bill (S. 945), which ultimately was enacted, was introduced, it did not follow the Judicial Conference recommendation, but continued to include the three subdivisions. As to subdivision (3), the Judicial Conference recommended the addition of the phrase "as to whether there should be a hearing," see n. 7, *supra,* but again stressed that its concern was, as with S. 3475, over the "delegation to magistrates." Hearings 245.

The tension established in this evolution is clear. On the one hand, Congress sought to enable district courts to authorize magistrates to conduct evidentiary hearings. On the other hand, there was apprehension that the power of authorization granted to district courts might lead to a rule permitting magistrates to exercise ultimate decisionmaking power reserved exclusively to Art. III judges. To avoid the latter but accomplish the former, Congress persisted in retaining the broad language of § 636 (b), and in retaining subdivision (3). Not only, as set

forth earlier, does the subdivision *not* limit the subsection, it was drafted in language to insure that it could not be read to preclude authorizing magistrates to conduct hearings in federal habeas corpus cases.[10]

Plainly, Congress could have used language that expressly precluded the latter. That this was not urged upon Congress by anyone, including the Judicial Conference, and that Congress did not include such language, alone suggests its intention to vest in district courts the power to authorize magistrates to hold hearings. Conversely, Congress would have taken certain risks had it expressly permitted magistrates to hold hearings, as revealed by the following colloquy between Chief Judge Hoffman and Senator Tydings at the Senate hearings:

> "Judge Hoffman. . . . And I have suggested in my statement . . . that the Federal magistrate could be assigned the task as a master to conduct plenary hearings. After all, [habeas corpus proceedings] are civil proceedings . . . not criminal proceedings.
>
> .       .       .       .       .
>
> "Senator Tydings. [S]ince we . . . don't have [in § 636 (b)] 'Including hearings' or 'Including plenary hearings,' or 'including the conducting of plenary hearings,' it is not what we should have?
>
> "Judge Hoffman. I am fearful that someone will say that this is merely an effort on the part of the judge to delegate his judicial function.
>
> "Senator Tydings. I think that is a good point, Judge Hoffman." Hearings 93–94.

In light of the need for Congress to avoid language suggesting an unconstitutional delegation of a judicial

---

[10] Even counsel for respondent agrees (contrary to the Court's conclusion, *ante,* at 470) that subdivision (3) "could have been more clearly expressed." Tr. of Oral Arg. 20.

function to a magistrate, the ambiguous provision of § 636 (b)—unlimited by the provisions of subdivision (3)—should be interpreted to permit magistrates to conduct evidentiary hearings in federal habeas corpus cases, § 2243 notwithstanding, because (1) to the extent the subject was expressly discussed in the legislative history, such permission was intended, and (2) such an interpretation would serve the two principal objectives of the Act. See nn. 2 and 3, *supra*.

## III

The final limitation of the Act, that additional duties assigned to magistrates must not be "inconsistent with the Constitution," needs little discussion here. The Court does not suggest that the conduct of an evidentiary hearing, where the district judge retains the power to make the final decision on an application for a writ of habeas corpus, would be unconstitutional either under Art. III or as a matter of due process of law. Where this situation obtains, the magistrate's conduct of the hearing would be clearly constitutional.[11]

---

[11] The commentators have generally agreed with this conclusion. Shapiro, Federal Habeas Corpus: A Study in Massachusetts, 87 Harv. L. Rev. 321, 365 (1973); Peterson, The Federal Magistrate's Act: A New Dimension in the Implementation of Justice, 56 Iowa L. Rev. 62, 98 (1970); Doyle (District Judge and Chairman of the Judicial Conference Committee charged with implementing the Act), Implementing the Federal Magistrates Act, 39 J. B. A. Kan. 25, 69 (1970); Note, Proposed Reformation of Federal Habeas Corpus Procedure: Use of Federal Magistrates, 54 Iowa L. Rev. 1147 (1969). So, too, would the Judicial Conference appear to be in agreement. Proposed Amendments to the Proposed Rules Governing Habeas Corpus Proceedings for the United States District Courts, Committee on Rules of Practice and Procedure, Rule 11 (Preliminary Draft, Jan. 1973). Congress has given the magistrates power to conduct trials of a limited nature, 28 U. S. C. § 636 (a) (3), which grant of power, carefully limited, appears not to contravene any con-

Not only would his report and recommendation to the district judge be subject to amendment or outright rejection, the district judge could, at the behest of the habeas corpus petitioner or on his own motion, conduct his own evidentiary hearing to judge for himself, for example, the credibility of witnesses if he deems their testimony essential to disposition of the application. To the extent a problem of constitutional magnitude may be foreseen in the particulars of the rules established by a district court, those rules can be construed to comport with constitutional requirements. In any event, now that the Court has construed the Magistrates Act contrary to a clear legislative intent, it is for the Congress to act to restate its intentions if its declared objectives are to be carried out.

.

---

stitutional prohibition. Cf. *Palmore* v. *United States,* 411 U. S. 389 (1973). *A fortiori* granting magistrates the power to conduct hearings where the district judge retains ultimate decisionmaking authority comports with constitutional requirements. Cf. *Campbell* v. *U. S. District Court,* 501 F. 2d 196 (CA9 1974) (hearings on motion to suppress); *Harlem River Consumers Coop., Inc.* v. *Associated Grocers of Harlem, Inc.,* 54 F. R. D. 551 (SDNY 1972) (hearings on discovery motion).