**Harold Lee MULLINAX**

v.

**WILLETT LINCOLN–MERCURY, INC.**

**Civ. A. No. 19443.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 30, 1974.

Hugh M. Dorsey, III, Atlanta, Ga., for plaintiff.

Thomas E. Raines, Atlanta, Ga., for defendant.

### ORDER

EDENFIELD, Chief Judge.

The captioned case arises under the Truth in Lending Act (hereinafter "Act"). Pursuant to Local Rule 250 the case was assigned to a bankruptcy judge of this district to act as a special master in accordance with Rule 53, Fed.R.Civ.P. Local Rule 250 is the product of a decision reached by this court that the circumstances surrounding cases brought pursuant to the Act justified the utilization of special masters. *See* Order of the Court re: Bankruptcy Judges as Special Masters (N.D.Ga. Mar. 6, 1973). The case is before the court at this time on the defendant's objection to Local Rule 250 and its motion to revoke the reference of the case thereunder.

The defendant contends that Rule 53, Fed.R.Civ.P., does not permit the reference of a class of litigation to a special master and that even if a reference were appropriate, bankruptcy judges are prohibited from acting as masters in cases other than those related to bankruptcy proceedings.

The relevant portions of Rule 53 provide as follows:

"(a) Appointment and Compensation [of Masters]. Each district court with the concurrence of a majority of all the judges thereof may appoint one or more standing masters

for its district, and the court in which any action is pending may appoint a special master therein. As used in these rules the word 'master' includes a referee, an auditor, an examiner, a commissioner, and an assessor.

. . .

"(b) Reference. A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.  *  *  * "

The sole thrust of defendant's first argument is that since, under the rule, reference to a master should be "the exception and not the rule", each reference should be on a case-by-case basis and that any reference of an entire "class" of cases, as a class, is inherently impermissible.

We emphatically disagree. First, neither the rule nor the cases spell out any such distinction. It is true that in La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), the Supreme Court strongly suggests that antitrust cases, because of their characteristics and complexity, should probably never be referred to a master; but even a superficial analysis of *La Buy* will show that the objections of the Court to reference of antitrust cases were not based on the fact that antitrust cases *were* a class but rather on the characteristics of the class. Just as the characteristics of one class of federal cases will almost always make a reference unsuitable, the characteristics of another class may make it "exceptional" within the rule and therefore almost always appropriate for reference. We claim these characteristics for truth in lending.

We think a simple comparison of the characteristics of truth in lending cases "as a class" with antitrust cases "as a class" will admirably demonstrate the point: whereas antitrust cases are notoriously and ponderously slow, truth in lending cases are basically simple. Consumer protection legislation calls only for inexpensive, expedient and final application of the statute or regulations to a written credit obligation. Whereas antitrust calls for wisdom and deliberation in predicting and resolving fundamental disputes about commercial cause and effect for the regional and sometimes even the national economy, truth in lending usually concerns only one lender and one borrower and usually presents no disputed facts at all. Whereas the complexities and importance of antitrust call for the very best the federal courts can provide, truth in lending requires only legal familiarity with an announced federal policy embodied in a statute and explained in a regulation and examination of a single loan document to determine whether the required costs of the loan have been fully and properly disclosed as the law requires. Not even the defendants can or do contend that bankruptcy judges are not peculiarly qualified to make this decision. As a matter of fact, while numerous bankruptcy cases contain many more involved and complicated problems, nevertheless the determination of the validity of financial and commercial documents by bankruptcy judges in cases under the Bankruptcy Act gives them a special expertise in determining the validity of contracts and the legality of disclosures under the truth in lending laws.

The number of truth in lending cases filed with this court is staggering. During the period March 14, 1973 through July 31, 1974, some 725 truth in lending cases have been referred to the bankruptcy judges.[1] During the same period 385 of these cases were finally disposed of by the referees, with almost no appeals and very few petitions for review. Truth in lending cases currently represent 28% of all cases being filed

---

1. *See* attached Appendix "A".

with this court.[2] Handled by the judges as ordinary litigation, this simply would not have been possible. So handled, each defendant would have been entitled to a four months' delay for discovery alone; and the Atlanta Bar Association is already complaining that even this is not enough. There are literally hundreds of cases being filed under the Act and each calls for a special expertise in a narrow field of the law. Dispatch in the resolution of the issues is a requisite to both the consumer and creditor elements of the public. The volume of the cases demands some procedural device which will permit the parties to brief and argue their positions in a convenient and timely manner. Local Rule 250 provides such a device.

After referral and a hearing most, if not all, truth in lending cases are either settled out or disposed of by way of summary judgment. The cases rarely present any factual issues. However, the parties are at liberty to object to any factual finding of the master which is "clearly erroneous". Rule 53(e)(2). The court is, of course, free to modify or reject any legal conclusions which the master reports. *Id.* To this court's knowledge there has never been a truth in lending case which has required an actual trial in this district. Essentially Local Rule 250 merely provides the court with the recommendations of a special master, a virtual expert in the area of truth in lending, to which either party may object. The most obvious purpose which the procedure serves is that it provides the court with the master's view of the law as applied to the credit contract in the case. Since this is clearly a question of law, the master's recommendation need not be followed. Hence the notion of prejudice to the parties because of the absence of a district court judge in the initial stage of the proceedings simply is not apparent. At the same time, however, the parties have an available, efficient and judicious procedure for resolving their claims.[3]

Local Rule 250 was created to deal with a novel situation. The Truth in Lending Act is a relatively new piece of legislation. The case law surrounding the use of special masters to this point

2. *See* attached Appendix "B".

3. In Wingo v. Wedding, 418 U.S. 461, 94 S. Ct. 2842, 41 L.Ed.2d 879 (1974), the Supreme Court held that United States magistrates may not, pursuant to the local rule of a district court, hold evidentiary hearings in a habeas corpus proceedings. Unable to find any support in the Magistrate's Act, 28 U.S.C. §§ 631–639, indeed, concluding that that Act precluded the magistrates from holding such hearings, the Court held that the habeas corpus statute, 28 U.S.C. § 2241 et seq., requires federal *judges* to hold any evidentiary hearing necessary to the resolution of a habeas corpus application. The Court stressed the significance which contested facts play in habeas corpus proceedings, noting that such proceedings often involve the review of facts which have already been tried to a court.

The rationale employed by the Court in *Wingo, supra,* is not at all applicable to the instant situation. The habeas corpus statute sets forth a fairly straightforward procedure for application and issuance of the writ. The language of the statute clearly indicates that only a federal judge may conduct an evidentiary hearing in ruling on a habeas corpus application. 28 U.S.C. § 2243; Wingo v. Wedding, *supra*; Holiday v. Johnston, 313 U.S. 342, 550, 61 S.Ct. 1015, 85 L.Ed. 1392 (1941). The Truth in Lending Act merely states that any action brought thereunder may be filed in a federal district court or in any other court of competent jurisdiction. 15 U.S.C. § 1640(e). Thus there is no apparent prohibition in the Act which would preclude a truth in lending case filed in this court from being referred to a special master.

In *Wingo*, the Supreme Court was particularly concerned that the local rule in issue permitted magistrates, without authority either in the habeas corpus statute or the Magistrate's Act, to make proposed findings of fact following an evidentiary hearing. Here there would be no basis for such a concern. Today this court holds that the reference of truth in lending cases pursuant to Local Rule 250 is proper under Rule 53, Fed.R.Civ.P. Rule 53 clothes special masters with the authority to make findings of fact which are binding on the court unless clearly erroneous. Thus, since the reference of the cases is proper the fact-finding duties of the masters are clearly in order.

simply does not comprehend the needs which Local Rule 250 seeks to satisfy. Rule 53(b) requires only a showing of some "exceptional condition" to justify a reference to a special master. The court recognizes the well-settled notion that that expression means quite literally the "exceptional condition". It is precisely because of this court's conviction that the demands of the truth in lending litigation are in fact so overwhelming that the reference in this case and all other references currently being made under Rule 250 of the Local Rules are absolutely warranted.

Defendant's second argument, that the qualifications for bankruptcy judges prohibit them from acting as masters in cases other than bankruptcies is simply unsupported either in Rule 53 or in the bankruptcy statutes. Section 35 of the Bankruptcy Act, as amended, 11 U.S.C. § 63, merely sets forth the qualifications of referees (now bankruptcy judges). Under this section an individual is eligible for appointment as a full-time bankruptcy judge if he is "(1) competent to perform the duties of a referee in bankruptcy; (2) not holding any office of profit or emolument under the laws of the United States or of any State or subdivision thereof other than conciliation commissioner or special master under this Act . . . ." Title 11, U.S.C., § 75, sets forth the method by which the number of bankruptcy judges in a judicial district is to be fixed. Section 68 of the same title sets forth the manner in which the bankruptcy judges are to be paid. The defendant argues that the judges are thereby limited in the matters which are properly within their jurisdiction and thus have no authority to act as special masters of truth in lending cases. The court is unpersuaded.

The defendant's contention that the reference of a truth in lending case to a bankruptcy judge is not permitted by the qualifications for that office is simply a non sequitur. Whether or not a reference under Local Rule 250 is proper in terms of the bankruptcy judge's qualifications to hold that position has no relevance in considering whether the same judge may also be qualified and permitted to act as a special master. The sections of the Bankruptcy Act cited by the defendant merely delineate the qualifications, methods of appointment, and compensation for bankruptcy judges. There is not a word in the Bankruptcy Act which would prohibit the use of bankruptcy judges as special masters under Local Rule 250. References to part-time bankruptcy judges as special masters in equity are expressly permitted by 11 U.S.C.A. § 73, and yet the qualifications for part-time and full-time referees are just the same. Certainly the role of special masters under the Local Rule is not tantamount to an "office of profit . . . under the laws of the United States." Indeed there is no provision in the local rule for compensation of the master either by the parties or the court. Bankruptcy judges are both officers and personnel of this court. As such they are available to serve the court in any capacity which is neither prohibited by the Constitution or the Bankruptcy Act nor in conflict with their duties thereunder.[4]

For the foregoing reasons the defendant's motion to vacate the reference of this case to the special master is denied. The case is hereby resubmitted to the master for findings of fact and conclusions of law in accordance with the procedures set forth in Local Rule 250.

It is so ordered.

---

4. Before Local Rule 250 was promulgated the court discussed the matter of truth in lending references with the local bankruptcy judges and concluded they were fully qualified. Those judges assured the court they could and would do the job; in fact they welcomed the assignment as adding to their stature in the federal judiciary and as providing a welcome diversion from their routine bankruptcy chores.

APPENDIX A

UNITED STATES GOVERNMENT

## Memorandum

TO : Honorable W. Homer Drake, Jr.          DATE: August 18, 1974

FROM : Clerk, United States District Court

SUBJECT: Report of Truth-in-Lending Cases Referred and Disposed of by
Appropriate Ruling from March 14, 1973 through July 31, 1974.

|  | Bankruptcy Judge Drake | Bankruptcy Judge Kahn | Bankruptcy Judge Norton |
|---|---|---|---|
| Referred | 241 | 241 | 243 |
| Disposed of | 142 | 124 | 119 |

Ben H. Carter, Clerk

By: *Mary J. Watson*
Deputy Clerk

APPENDIX B

UNITED STATES GOVERNMENT

## Memorandum

TO : Honorable William    O'Kelley          DATE: July 31, 1974
United States District Judge

FROM : Clerk, U. S. District Court

SUBJECT: Truth-in-Lending Cases

Reference is made to your memorandum of July 26, 1974 regarding truth-in-lending case filings.

The statistical information requested is as follows:

| MONTH | TOTAL CIVIL CASES FILED | NUMBER OF TRUTH-IN-LENDING CASES FILED | PERCENTAGE |
|---|---|---|---|
| July 1973 | 162 | 25 | 15.4% |
| August 1973 | 227 | 35 | 15.4% |
| September 1973 | 190 | 43 | 22.6% |
| October 1973 | 230 | 67 | 29.1% |
| November 1973 | 175 | 45 | 25.7% |
| December 1973 | 220 | 77 | 35.0% |
| January 1974 | 179 | 41 | 22.9% |
| February 1974 | 214 | 50 | 23.6% |
| March 1974 | 266 | 91 | 40.3% |
| April 1974 | 304 | 112 | 36.8% |
| May 1974 | 237 | 80 | 33.8% |
| June 1974 | 261 | 80 | 30.6% |
| TOTAL | 2665 | 746 | 28.0% |

*Ben H. Carter*
Ben H. Carter, Clerk