**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ora CURRY, Defendant-Appellant.**

**No. 84–2065.**

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1985.

Decided July 3, 1985.

Michael S. O'Connell, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Barry A. Spevack, Monico & Pavich, Chicago, Ill., for defendant-appellant.

Before WOOD and COFFEY, Circuit Judges, and PECK, Senior Circuit Judge.[1]

JOHN W. PECK, Senior Circuit Judge.

This case presents the question of whether a federal judge may delegate the conduct of a probation revocation hearing to a magistrate. We hold that he may not. Since appellant received a hearing before a magistrate but did not receive a hearing before a federal judge, we reverse the revocation of his probation and remand for the conduct of a hearing by the district judge.

I.

Because we reverse on procedural grounds, the underlying facts as to the conduct which led to appellant's sentence to a term of probation, and the subsequent revocation of his probation, need not be discussed in detail. It will suffice to note that appellant received three concurrent five-year federal probation terms in 1977, after pleading guilty to three counts relating to interstate trafficking in stolen motor vehicles, in violation of 18 U.S.C. §§ 2312 and 2313. In October 1982, the Government filed a motion in the United States District Court for the Northern District of Illinois, asking that appellant be required to show cause why probation should not be

revoked. In early 1983, the chief judge of that court referred the case to a magistrate to conduct a hearing. Both sides objected. Despite these objections, the district court went ahead with the referral to the magistrate, who conducted a probation revocation hearing on January 16, 1984. On February 1, 1984, the magistrate entered a report, recommending the revocation of probation. On May 4, 1984, the district court revoked probation, and on June 18, 1984, it sentenced appellant to five years imprisonment. Appellant then appealed to this court, and has remained free on bond pending appeal.

II.

In deciding whether the conduct of probation revocation hearings by federal magistrates in place of district judges is proper, we must consider both the rules governing the revocation of probation and those setting forth the duties of magistrates. 18 U.S.C. § 3653 sets forth procedures under which federal district courts may revoke probation. Except for language about the probationer being "taken before the court," the statute is silent as to the need for a revocation hearing. The Supreme Court held in *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973), that probation revocation can occur only after two hearings, a preliminary hearing "to determine whether there is probable cause to believe that [the probationer] has committed a violation of his parole," and "a somewhat more comprehensive hearing prior to the making of the final revocation decision." *Id.* The Court did not say, however, who was to conduct the hearings. It is the assignment of the second of these duties to a magistrate which is at issue here.

The Federal Magistrates Act,[2] 28 U.S.C. §§ 631–639, does not specifically au-

---

**1.** Honorable John W. Peck of the Sixth Circuit is sitting by designation.

**2.** The office of federal magistrate was established in 1968 by the Federal Magistrates Act, Pub.L. No. 90–578, 82 Stat. 1108, codified at 28 U.S.C. §§ 631–639. Magistrates replaced the former United States Commissioners, and perform a number of functions in the conduct of the judicial system, including the issuance of warrants, the trial, with the consent of the de-

thorize district courts to assign magistrates to conduct probation revocation hearings. The Government argues, however, that the procedure is authorized by 28 U.S.C. § 636(b), which allows the assignment by district courts to magistrates of "such additional duties as are not inconsistent with the Constitution and laws of the United States."[3]

■ The legislative history of the amendment containing this language convinces us that Congress's whole point in allowing magistrates to perform additional duties was to insure that federal judges would be free to perform their crucial adjudicatory duties without undue distraction. As the House and Senate reports said,[4]

> If district judges are willing to experiment with the assignment to magistrates of other functions in aid of the business of the courts, there will be increased time available to judges for the careful and unhurried performance of their vital and traditional adjudicatory duties and a consequent benefit to both efficiency and the quality of justice in the Federal Courts.

H.R.Rep. No. 1609, 94th Cong., 2d Sess. 12 (1976) [hereinafter cited as House Report], *reprinted in* 1976 U.S.Code Cong. & Ad. News 6162, 6172; S.Rep. No. 625, 94th Cong., 2d Sess. 10–11 (1976) [hereinafter

cited as Senate Report]. The reports specifically described "the congressional intent that the magistrate assist the district judge in a variety of pretrial and preliminary matters thereby *facilitating the ultimate and final exercise of the adjudicatory function* at the trial of the case." House Report at 7, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 6167; Senate Report at 5 (emphasis added).[5] While the reports do indicate that "assignment of other duties to magistrates which may not necessarily be included in the broad category of 'pretrial matters'" would be permissible, House Report at 12, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 6172, Senate Report at 10, the examples the reports gave were mostly of routine duties, such as the acceptance of jury verdict forms. *Id.* While some of the examples given were of somewhat more discretionary functions, such as the review of default judgments, none rose to the level of gravity of conducting a hearing to determine whether a person should go to prison. Both the House and the Senate made their intent explicit at the conclusion of this discussion by stating, in language quoted *supra*, that the reason for allowing magistrates to perform such duties was to leave federal judges free to attend to "their vital and traditional adjudicatory duties."[6]

fendant, of petty criminal offenses, and the disposition of discovery and other pre-trial motions. See generally 28 U.S.C. §§ 631–639. Magistrates do not have life tenure, but serve for a fixed term, 28 U.S.C. § 631(e); they are accordingly Article I officers, and not Article III judges. *See generally* C. Wright, Federal Courts § 11 (4th ed. 1983).

3. This provision, in its present form, was enacted as one of a series of amendments added to the Magistrates Act by Congress in 1976. The primary purpose of the amendments was to make clear that the statute authorized magistrates to conduct evidentiary hearings in habeas corpus cases, after the Supreme Court had held on statutory grounds that they could not in *Wingo v. Wedding,* 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974). *See* S.Rep. No. 625, 9th Cong., 2d Sess. 3 (1976); H.R.Rep. No. 1609, 94th Cong., 2d Sess. 4 (1976); *reprinted in* 1976 U.S.Code Cong. & Ad.News 6162, 6165.

4. The House and Senate reports were largely identical in wording. The quoted language ap-

peared in both reports; elsewhere in this opinion, where both Senate and House reports are cited, the two contain identical language.

5. The Government points out that both reports, in statistics quoted immediately before this statement, noted the fact that magistrates were handling "probation revocation" matters. In the absence of any indication as to precisely what the magistrates were doing with respect to probation revocations, and particularly as to whether they were conducting hearings in place of federal judges, we cannot regard this rather enigmatic reference as proof of congressional intent.

6. The Government argues that Congress was aware, at the time it passed the amendment authorizing expansion of magistrates' duties, that magistrates were already conducting probation revocation hearings. The Government contends that Congress, by not disapproving the practice in its description of magisterial duties, must have intended to approve it. A careful

The legislative history indicates that Congress wanted magistrates to help judges with their more routine duties and for judges to continue to perform adjudicatory functions. The question, then, is whether the conduct of a hearing to consider the revocation of probation is a routine administrative matter or a "vital and traditional adjudicatory" function. To ask the question is virtually to answer it. As Judge Keith said in *Banks v. United States*, 614 F.2d 95 (6th Cir.1980):

> Sentencing is probably the most difficult task faced by a federal district judge. It is a difficult, highly subjective duty in which myriad factors play a part.

*Id.* at 99. This opinion went on to observe that a hearing before the revocation of probation and consequent resentencing provides "a vital opportunity to assess the defendant," and noted that "a cold hearing record is no substitute for personal observation." In this opinion it was concluded that a probation revocation hearing before a magistrate cannot be substituted for a hearing before a federal judge.

 We agree with *Banks*. The determination of a sentence imposes a responsibility of staggering proportions on the court. In the eyes of most citizens, this function is probably the single most important duty performed by judges. Its mishandling, either through the imposition of a harsh sentence on a minor offender or the exercise of leniency toward a hardened criminal, is likely to provoke a storm of public controversy. The *Banks* view that such a function should be performed only by one who has had the opportunity to judge for himself the credibility of those on whose word the decision is based is in line with one of the most deeply rooted principles in our law.[7]

The *Banks* opinion is a carefully reasoned one. It offers a careful consideration of the legislative history of the 1976 amendments to the Magistrates Act which reaches a conclusion in agreement with that we have reached on the basis of our own consideration of the legislative history. No circuit has taken a position at odds with that of the *Banks* court and we are in accord with its conclusion.

### III.

The legislative history suggests that Congress did not intend to allow probation revocation hearings before federal magistrates to be substituted for hearings conducted by the judge actually making the probation revocation decision. Soundly reasoned judicial authority supports this view. For all of these reasons, we conclude that the Magistrates Act does not authorize the substitution of a probation revocation hearing before a magistrate for the conduct of such a hearing by a federal judge. Because appellant Curry did not receive such a hearing, we reverse the revocation of his probation, and remand this

---

examination of the information presented to the Senate, however, actually undercuts the inference the Government would have us draw. A *memorandum* from the Administrative Office of the United States Courts which was before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary during consideration of the amendment listed "conduct of final probation revocation hearings and submission of a report and recommendations to the judge" among matters being handled by magistrates, but then added this crucial qualification: "Any party aggrieved by a magistrate's determination *should be entitled to a hearing before a district judge* to the same extent as if the judge were hearing the matter initially." Jurisdiction of United States Magistrates: Hearing on S. 1612 and 1613 before the Subcommittee on Improvements in Judicial Ma-

chinery of the Senate Committee on the Judiciary, 94th Cong. 1st Sess. 24 (1975) (emphasis added). The language considered by the Senate thus clearly expressed the understanding that any probation revocation hearings conducted by magistrates were not to take the place of hearings by judges.

7. Examples of rules of law based on this principle include the rule that findings of fact by a federal judge may "not be set aside unless clearly erroneous, [with] due regard ... given to the opportunity of the trial court to judge of the credibility of the witnesses," Fed.R.Civ.P. 52(a), the similar rule governing review of decisions by administrative law judges in social security cases, and the still more stringent rule governing review of jury verdicts.

case for further proceedings not inconsistent with this opinion.