Johnnie F. FLOURNOY, Jr.,
Petitioner–Appellant,

v.

Ronald C. MARSHALL, Supt.,
Respondent–Appellee.

Ralph Edward DEAN,
Petitioner–Appellant,

v.

Ronald C. MARSHALL, Supt.,
Respondent–Appellee.

Mark Dean ALDRIDGE,
Petitioner–Appellant,

v.

Ronald C. MARSHALL, Supt.,
Respondent–Appellee.

Nos. 86–3236, 86–3706 and 86–3767.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 9, 1987.

Decided March 22, 1988.

Johnnie F. Flournoy, Jr., pro se.

Edward F. Marek (argued), Federal Public Defender, Cleveland, Ohio, for petitioner-appellant in No. 86–3236.

Stuart A. Cole (argued), Asst. Atty. Gen., Columbus, Ohio, for respondent-appellee in No. 86–3236.

John A. Bay (argued), Ohio Public Defender Com'n, Columbus, Ohio, for petitioners-appellants in Nos. 86–3706 and 86–3767.

William J. Steele, Asst. Atty. Gen., Columbus, Ohio, John J. Gideon (argued), for respondent-appellee in No. 86–3706.

Christine Bobby, Asst. Atty. Gen., Columbus, Ohio, John J. Gideon, Asst. Atty. Gen. (argued), for respondent-appellee in No. 86–3767.

Before ENGEL, MERRITT and NORRIS, Circuit Judges.

ENGEL, Circuit Judge.

These three habeas corpus petitions, heard on the same day before the same panel, all involve the identical issue of the proper standard for review by the district court of the findings of U.S. Magistrates. In all three cases, petitions for habeas corpus were filed in the United States District Court for the Southern District of Ohio and referred to a U.S. Magistrate under section 636(b)(1)(B) of the Federal Magistrates Act. In all three cases the magistrates recommended that the petitions be denied. The three appellants filed timely objections. After reviewing the magistrates' reports and recommendations under the "clearly erroneous" standard, the district court accepted the findings of the magistrates and denied all three petitions. Our court has on numerous occasions specifically held that in cases referred under section 636(b)(1)(B), the "de novo" standard must be used to review the magistrate's findings. *See Thornton v. Jennings,* 819 F.2d 153 (6th Cir.1987); *Flournoy v. Seiter,* 816

F.2d 679 (6th Cir.1987); *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir.1981). Therefore, we reiterate our prior holdings and vacate and remand the cases for a "de novo" review of the magistrates' reports and recommendations to insure that they are legally and factually correct.

Although we have written on this subject before, we chose to discuss it in more detail here to emphasize to the district courts the importance of employing the proper standard for review of the magistrate's findings, a standard which is required not only by the Federal Magistrates Act but by the Constitution itself.

In 1968, Congress enacted the Federal Magistrates Act, 28 U.S.C. §§ 631–639, to empower U.S. Magistrates to aid the overburdened district courts in carrying out their duties. One of the more significant duties assigned to magistrates by district judges was the authority to conduct hearings on habeas corpus petitions. The validity of this practice was challenged several years later in *Wingo v. Wedding*, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974), when a prisoner claimed that a local court rule allowing district judges to refer evidentiary hearings on habeas corpus petitions to a magistrate was not authorized by the Federal Magistrates Act. In addressing the question of whether federal magistrates were authorized to conduct evidentiary hearings in federal habeas corpus cases, the Supreme Court first considered the history and language of the Habeas Corpus Act and concluded that both the language of that Act and the case law construing it expressly required an Article III judge to review habeas corpus petitions. The Court then considered whether the Federal Magistrates Act passed in 1968 changed this requirement, and held that it in fact supported the Habeas Corpus Acts requirement. Since the local court rule was found to conflict with both the Habeas Corpus Act and the Federal Magistrates Act, it was declared invalid and "[r]eview by magistrates of applications for post-trial relief [wa]s thus limited to review for the purpose of proposing, not holding, evidentiary hearings." *Id.* at 472–73, 94 S.Ct. at 2849.

In response to the Supreme Court's decision in *Wedding*, Congress passed a set of amendments in 1976 which not only enlarged the duties assignable to magistrates under section 636(b) of the Federal Magistrates Act,[1] but clearly stated Congress' intent to allow magistrates to conduct hearings on habeas corpus petitions, thus overruling *Wedding*.

The bill under consideration by the committee would accomplish [a] restatement and clarification of the Congressional intention [put into question by the Court in *Wedding*] that the magistrate should be a judicial officer who, not only in his own right but also under general

---

**1.** The relevant portions of the amended section 636(b) are as follows:

(b)(1) Notwithstanding any provision of law to the contrary—

\* \* \* \* \* \*

(B) a judge may ... designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (a), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

(C) the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties. Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

(2) A judge may designate a magistrate to serve as a special master pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts. A judge may designate a magistrate to serve as a special master in any civil case, upon consent of the parties, without regard to the provisions of rule 53(b) of the Federal Rules of Civil Procedure for the United States district courts.

28 U.S.C. § 636(b).

supervision of the court, shall serve as an officer of the court in disposing of minor and petty criminal and civil cases, and in hearing dispositive motions and evidentiary hearings when assigned to the magistrate by a judge of the court. H.R.Rep. No. 1609, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6162, 6165. "Therefore, passage of § 1283, as amended, will supply the congressional intent found wanting by the Supreme Court in *Wingo v. Wedding*, supra." *Id.* at 11, 1976 U.S.Code Cong. & Admin. News at 6171. To insure that litigants were not deprived of their right to trial by an Article III court,[2] Congress also set forth three separate standards for referral and review of the magistrate's determinations, depending on the nature of the duty, so that the district court judge would serve as the ultimate adjudicator in all cases. The first category of duties, not relevant here, provides the magistrate with the ability to hear and make recommendations on certain pretrial issues with review by the district judge under the "clearly erroneous" standard. 28 U.S.C. § 636(b)(1)(A).

The second category of duties, applicable in the review of a writ of habeas corpus, provides the magistrate with authority to conduct hearings on most types of motions, as well as hearings on *"applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement."* 28 U.S.C. § 636(b)(1)(B). The legislative history of this provision supports its clear language, and expressly states that section 636(b)(1)(B) is to be used for habeas corpus petitions.[3] The standard for review of the magistrate's recommendation is set forth at the end of that subsection:

"A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." (emphasis added). 28 U.S.C. § 636(b)(1)(B). In all three of the cases before us, the trial judge did cite section 636(b)(1)(B) in initially referring the habeas corpus petition to the magistrate. Thus, the original referral order was correct.

In the third category of duties, set forth under section 636(b)(2), the magistrate may be designated as a special master in any civil case upon consent of the parties or under exceptional circumstances. Although neither the language of the provision nor the legislative history indicate that this subsection cannot also be used to refer habeas corpus petitions to the magistrate, the language of Rule 8(b) of the rules governing section 2254 (habeas corpus) cases expressly requires a district court to make a de novo review of the magistrate's report and recommendation. No provision in the rules governing section 2254 suggests that the case may be referred to the magistrate as a special master or that the "clearly erroneous" standard may be used in reviewing a case. Thus, it appears that section 636(b)(2) was not intended to be used for referral of habeas corpus cases to a magistrate, although it is unclear such a referral is expressly prohibited, since that section is silent on the subject.

For our purposes here, however, it need not be determined whether section 636(b)(2) may be used to refer a habeas corpus petition to a magistrate acting as special master, since the relevant requirements for referral were not met. First, it is conceded by all parties involved that no special cir-

---

2. "An overriding concern in this area is that 'since the master's findings must be accepted unless they are clearly erroneous, [the reference of a nonjury case] involves the danger that the master, not the court, will in fact decide the case.' 9 C. Wright and A. Miller, § 2605 at 791." cited in *In re United States of America,* 816 F.2d 1083, 1091 (6th Cir.1987).

3. With regard to section 636(b)(1)(B), the House Report stated:
   The judge is given the widest discretion to 'accept, reject or modify' the findings and

recommendation proposed by the magistrate, including the power to remand with instruction. Thus, it will be seen that under subparagraphs (B) and (C) the ultimate adjudicatory power over dispositive motions, *habeas corpus,* prisoner petitions and the like is exercised by a judge of the court after receiving assistance from and the recommendation of the magistrate.
   H.R.Rep. No. 1609, 94th Cong., 2d Sess. 11, *reprinted in* 1976 U.S.Code Cong. & Admin. News 6162, 6171 (emphasis added).

cumstances existed in any of the three cases meriting appointment of a magistrate as special master. Second, as our court found in *Hill v. Duriron,* 656 F.2d 1208 (6th Cir.1981), under facts almost identical to the present case, implied consent to appointment of a special master cannot be presumed when the parties are uncertain under which authority the case was being referred. *Id.* at 1214. Since the trial judge cited section 636(b)(1)(B) in his original referral order, he gave the parties the impression that the magistrate's report and recommendation would be reviewed under the "de novo" standard, regardless of whether they consented to the referral. *Id.*

Thus, as the statutory design and legislative history of the Federal Magistrates Act makes evident, Congress intended the standards for review of a magistrate's findings to be taken seriously and applied in accord with the express language set forth in that statute. For review of the magistrate's findings in evidentiary hearings and on motions for posttrial relief, Congress insured that the district judge would be the final arbiter by providing a "de novo" standard for review under one approach (section 636(b)(1)(B)), *see Thomas v. Arn,* 474 U.S. 140, 142, 106 S.Ct. 466, 468, 88 L.Ed.2d 435 (1985); *Tuggle v. Seabold,* 806 F.2d 87 (6th Cir.1986); *Brown v. Wesley's Quaker Maid, Inc.,* 771 F.2d 952 (6th Cir.1985), and by requiring consent of the parties in order to review a magistrate's recommendation under the alternate, weaker "clearly erroneous" standard (section 636(b)(2)). Thus, in these cases the litigants' right to trial by an Article III court is jeopardized when the statute is interpreted loosely and the trial judge reviews the magistrates' reports under the "clearly erroneous" standard without consent of the parties.

The seriousness of the district court's error in applying the wrong standard takes on even more significance when a case like appellant Aldridge's is considered. Aldridge based his petition for writ of habeas corpus on the allegation that his right against self-incrimination was violated under *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1980). On the

third round of police interrogation and after requesting, but not receiving, the assistance of counsel on two prior occasions, Aldridge confessed to burglary and rape of the victim. His confession was later a key component of the government's case and was admitted into evidence at trial, despite his objection that the confession was obtained in violation of the Fifth and Fourteenth Amendments. After exhausting his Ohio remedies, Aldridge petitioned for a writ of habeas corpus before the United States District Court for the Southern District of Ohio. His case was referred by the district court judge to a U.S. Magistrate pursuant to 28 U.S.C. § 636(b)(1)(B), and the magistrate concluded that since Aldridge was arrested before *Edwards* was decided, pre-*Edwards* law should apply to his claim. The magistrate found that under this earlier law, Aldridge's right against self-incrimination was not violated.

Although it is not our duty to make a "de novo" determination of the correctness of the magistrate's factual findings, we do point out here that the magistrate's legal conclusion, at least, was incorrect. In *Shea v. Louisiana,* 470 U.S. 51, 55 n. 3, 59, 105 S.Ct. 1065, 1068 n. 3, 1069, 84 L.Ed.2d 38 (1985), the Supreme Court expressly held that any case pending at the time *Edwards* was decided would be controlled by *Edwards.* Thus, the magistrate applied the wrong standard to determine whether Aldridge's right against self-incrimination was violated. Whether this legal error affects the correctness of the final judgment denying Aldridge's petition can only be determined by application of the *Edwards* standard to the facts of this case, a task required of the district judge through the "de novo" standard of review. In fact, had the district judge reviewed Aldridge's original objections to the magistrate's report and recommendation under the more careful scrutiny of the applicable "de novo" standard, he undoubtedly would have saved both courts this unnecessary appeal and subsequent remand.

In summary, we hold that by failing to review the magistrate's report under the appropriate "de novo" standard, the district

judge has failed to fulfill his duties as an Article III judge. Although Congress did intend the magistrates to lend assistance to the overburdened district courts when appropriate, the carefully drafted statutory standards for review of the magistrate's findings are meant to insure that the district courts will not abdicate their responsibility.

Due to the great importance of adherence to the express provisions of section 636(b), we VACATE the decision of the district court in all three of these cases and REMAND to the district court for a "de novo" review of the record for at least those objections set forth by the parties and for further proceedings consistent herewith.