16 F.3d 1220
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Asad E. MUJIHADEEN, a/k/a Ronald Turks, Petitioner-Appellant,
v.
Billy McWHERTER, Respondent-Appellee.
 No. 92-6271.
 United States Court of Appeals, Sixth Circuit.
 Jan. 12, 1994.
 
 Before: NELSON and BATCHELDER, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a habeas corpus case arising under 28 U.S.C. Sec. 2254. The petitioner, who was convicted of first-degree murder under Tennessee's felony-murder doctrine, contends that a confession used against him at trial was obtained in violation of his rights under the Fifth and Sixth Amendments of the United States Constitution. He also asserts an ineffective assistance of counsel claim. The district court found no merit in the petitioner's contentions, and neither do we; the order denying habeas corpus relief will therefore be affirmed.
 
 I.
 
 2
 Late in the evening of October 25, 1978, police officers saw three men try to rob an individual who was making a night deposit at a Memphis, Tennessee, bank. In the course of the robbery attempt the victim was shot. The officers rushed to the scene, and a shoot-out ensued. One of the would-be robbers was apprehended on the spot, and another was arrested later that evening. The third--petitioner Asad E. Mujihadeen, formerly known as Ronald Turks--was able to avoid capture, but he turned himself in to police three days later. The victim ultimately died of the gunshot wounds; the three assailants were charged with murder, in addition to attempted robbery.
 
 
 3
 On the day of his arrest, Mr. Mujihadeen denied having had anything to do with the crime. He said that his automobile, which was found at the scene, had been stolen. After agreeing to make a statement to this effect, and having been advised of his Miranda rights, Mr. Mujihadeen said that he wished to speak to his lawyer. The police cut off questioning and permitted Mr. Mujihadeen to call an attorney. After the conference with the attorney was completed, Mujihadeen declined to give a sworn statement.
 
 
 4
 The petitioner remained in custody, and in the course of the next two weeks he was transported twice from the county jail to the courthouse. On one of his appearances in court the public defender's office was appointed to represent him, his first attorney having withdrawn.[1] On the way back to the jail, police officers told Mr. Mujihadeen that they knew his earlier statements were untrue because his cohorts had identified him as the "trigger man" in the robbery. They then asked him if he wanted to change his earlier statement. As one of the officers testified:
 
 
 5
 "When we left the court area, we told--we started out of the courthouse building and we asked Mr. Turks if he had changed his mind about giving a statement or changing his story from what he had originally told us, and he said he had been thinking about it. We made the statement to him that, 'You know you didn't tell us the truth in that statement.' And he said he knew that and that he had considered getting in touch with us to give a statement telling us the truth about what actually happened ... [w]e told him that, you know, we would be glad to listen to him any time he wanted to change his story or add anything ... and we told him, 'Well you know, if you're going to do it, today would be as good a day as any, it might be the best time today.' "
 
 
 6
 After taking advantage of an opportunity to speak to his mother, Mr. Mujihadeen told the police that he felt he was in a bind and wanted to discuss the matter with them. The police immediately took him to the police station and again advised him of his Miranda rights. Indicating that he understood the Miranda warning, Mr. Mujihadeen gave a recorded question and answer statement in which he admitted that he was at the scene of the robbery-murder but denied that it was he who had shot the victim and denied having known that his cohorts were planning a robbery. Mr. Mujihadeen now says that he decided to make the statement only because the officers had been "nagging" him throughout his custody.
 
 
 7
 Mr. Mujihadeen's automobile and his .22 caliber revolver--later determined to be the murder weapon--were introduced into evidence at trial. One of the two officers testified that Mr. Mujihadeen was the "trigger man." Over objection, the government also introduced the confession Mr. Mujihadeen had made to the police.
 
 
 8
 A jury found Mr. Mujihadeen guilty of attempted robbery and of murder during the perpetration of a robbery (felony-murder). He was sentenced to life imprisonment. Mr. Mujihadeen appealed unsuccessfully to the Tennessee Court of Criminal Appeals. A further direct appeal to the Tennessee Supreme Court was not attempted within the prescribed time limit.
 
 
 9
 In 1981 Mr. Mujihadeen filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Tennessee. The petition was dismissed for failure to exhaust state remedies. Mr. Mujihadeen subsequently sought a writ of habeas corpus in state court, alleging that he had been denied effective assistance of counsel. He also filed an application for a delayed direct appeal to the Supreme Court of Tennessee.
 
 
 10
 The Tennessee Court of Criminal Appeals held that Mr. Mujihadeen's attorney had fallen below constitutional standards of effectiveness in failing to pursue an appeal to the Tennessee Supreme Court. The court therefore vacated its earlier judgment and entered a new judgment from which the defendant could file a timely direct appeal. Mr. Mujihadeen did appeal to the Tennessee Supreme Court, raising his remaining ineffective assistance of counsel claims, but the Supreme Court affirmed the conviction.
 
 
 11
 After exhausting his post-conviction remedies in Tennessee, the petitioner commenced the present federal habeas proceeding. The case was referred to a magistrate judge, who recommended that the petition be denied. The district court accepted the recommendation and entered final judgment on March 27, 1990.
 
 
 12
 Mr. Mujihadeen appealed to this court. We vacated the judgment and remanded the case on the ground that it was unclear whether the district court had engaged in a de novo review of the magistrate judge's report and recommendation, as required by Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir.1988). The district court subsequently entered another order denying Mr. Mujihadeen's petition, stating that the required de novo review had been conducted. This appeal followed.
 
 II.
 A.
 
 13
 In challenging the admission of his confession at trial, the petitioner argues that the confession was invalid because the police initiated a conversation with him after his lawyer had been appointed and because his lawyer was not aware of the "interrogation." In this connection Mr. Mujihadeen cites Edwards v. Arizona, 451 U.S. 477 (1981), where the Supreme Court held that a waiver of Miranda rights is not valid when police initiate further questioning after those rights have been invoked. He also cites Michigan v. Jackson, 475 U.S. 625 (1986), where the Court held that initiation of questioning by the police after formal charges had been brought and counsel had been appointed violated the Sixth Amendment right to counsel.
 
 
 14
 In his second appeal to the Court of Criminal Appeals and in the subsequent direct appeal to the Tennessee Supreme Court, however, Mr. Mujihadeen failed to raise the confession issue. There has been no showing of cause for this failure, and consideration of the claim by this court appears to be barred. See Coleman v. Thompson, 111 S.Ct. 2546, 2565 (1991); Riggins v. McMackin, 935 F.2d 790 (6th Cir.1991).
 
 
 15
 Mr. Mujihadeen's argument lacks merit in any event. In Solem v. Stumbs, 465 U.S. 638, 650-51 (1984), as the magistrate judge noted, the Supreme Court held that Edwards should not be applied retroactively to convictions that were final when Edwards was handed down. Applying the law governing confessions prior to Edwards, see Michigan v. Mosley, 423 U.S. 96 (1975), the magistrate judge concluded that the defendant had understood his Miranda rights and knowingly waived them; that his right to cut off questioning had been "scrupulously honored" by the police officers; and that the confession had been voluntary. We are satisfied that the magistrate judge's conclusions were correct. Even if Edwards were applicable to the defendant's case, moreover, the result would probably be the same; we consider it doubtful that the circumstances of the defendant's confession violated the rule of law set forth in Edwards.
 
 
 16
 Michigan v. Jackson, 475 U.S. 625 (1986), is of no help to the petitioner, because that case was unquestionably decided after his conviction became final. See Teague v. Lane, 489 U.S. 288 (1989), holding that decisions announcing new constitutional rules should not be applied retroactively to cases pending on collateral review. Michigan v. Jackson did announce a new constitutional rule, and it may not be applied retroactively here.
 
 B.
 
 17
 Mr. Mujihadeen also argues that his trial counsel did not meet constitutional standards of effectiveness because the lawyer failed to conduct an adequate pretrial investigation and chose not to make a closing argument in the guilt phase of the bifurcated trial. We do not find the argument persuasive.
 
 
 18
 In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for deciding whether a defendant's Sixth Amendment right to counsel has been violated by deficient representation:
 
 
 19
 "First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.
 
 
 20
 Even in cases where the attorney's representation has fallen below an objective standard of reasonableness, id. at 688, the defendant can only prevail upon a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694.
 
 
 21
 We find no error in the district court's conclusion here that Mr. Mujihadeen's lawyer was as diligent as he needed to be in his pretrial investigation and preparation. In light of the overwhelming evidence of Mujihadeen's guilt, moreover, it would strain the imagination to conclude that more diligence by the lawyer would have led to a different result.
 
 
 22
 Mr. Mujihadeen asserts that the lawyer failed to pursue evidence regarding his identity as the "trigger man," but this assertion appears to reflect a misunderstanding of the felony-murder doctrine. A conviction on felony-murder charges is not dependent on a finding that it was the defendant who killed the victim--or even that the defendant planned to have someone else do so. Mr. Mujihadeen did not have to be the "trigger man" in order to be convicted of felony-murder.
 
 
 23
 Mr. Mujihadeen's argument that he was prejudiced by his lawyer's failure to give a closing argument is frivolous. The lawyer made a reasoned professional judgment that a closing argument at the guilt phase of the trial would damage his credibility with the jury. A conviction seemed inevitable, and the lawyer thought it best to hold his fire for the sentencing phase. The prosecutor was thereby denied an opportunity to cast Mr. Mujihadeen in a worse light than that already suggested. The tactical decision was a perfectly reasonable one, and the end result was as favorable to Mr. Mujihadeen as he could have hoped.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 The public defender's office was likewise to withdraw from the case, apparently because of a conflict of interest. Attorney Jack Nelson ultimately represented Mr. Mujihadeen at trial