**Clifford GOODBALLET, Petitioner,**

v.

**Lawrence MACK Respondent.**

**No. 4:00–CV–122.**

United States District Court,
N.D. Ohio,
Eastern Division.

March 14, 2003.

Paul Anthony Mancino, Jr., Mancino & Mancino, Cleveland, OH, for Petitioner.

Katherine E. Pridemore, Office of the Attorney General, Cincinnati, OH, for Respondent.

## OPINION & ORDER

GWIN, District Judge.

On January 14, 2000, Petitioner Clifford Goodballet ("Goodballet") filed a petition seeking a writ of habeas corpus. The Court assigned the case to Magistrate Judge William H. Baughman, Jr. for a report and recommendation. On February 19, 2003, Magistrate Judge Baughman issued his report and recommendation. In that report and recommendation, the Magistrate Judge recommended dismissing Goodballet's petition because Goodballet did not timely file it. Alternatively, Magistrate Judge Baughman found that Goodballet's claim failed on the merits. [Doc. 23.] Petitioner Goodballet timely objected to the Magistrate Judge's report. After conducting an independent review of the petition, the Court finds no merit in Goodballet's objections and dismisses Goodballet's petition for a writ of habeas corpus.

## I. Background

On May 18, 1993, the Columbiana County Court of Common Pleas convicted Goodballet of involuntary manslaughter and tampering with evidence after he pleaded guilty to both charges. On that same day, the state court sentenced Goodballet to concurrent sentences of five to twenty-five years imprisonment on the involuntary manslaughter charge and two years imprisonment on the tampering charge. Goodballet did not directly appeal his sentence. Instead, nearly four years later and on March 3, 1997, he moved the trial court to withdraw his guilty plea. The trial court denied the motion and the state appellate court affirmed the denial. On

January 20, 1999, the Ohio Supreme Court declined to hear Goodballet's appeal of the denial of his request to withdraw his plea.

On September 11, 1997, while his motion to withdraw was pending, the State of Ohio conducted a sexual predator hearing in which it adjudged Goodballet to be a sexual predator. The state appellate court affirmed the adjudication. On November 24, 1999, the Ohio Supreme Court dismissed Goodballet's appeal of his sexual offender classification.

On January 14, 2000, pursuant to 28 U.S.C. § 2254, Goodballet filed a petition for a writ of habeas corpus with this court. With his petition, Goodballet seeks habeas corpus relief to overturn his conviction.

## II. Summary of Legal Arguments

With his habeas petition, Goodballet makes two claims for habeas relief.[1] First, he alleges that his plea was not voluntary because he relied upon a misrepresentation about how much prison time he would serve. Next, he contends that his guilty plea was unconstitutional because he says the trial court never informed him that the state could classify him as a sexual predator due to his guilty plea.

In his report, the Magistrate Judge recommends dismissing Petitioner Goodballet's writ of habeas corpus because Goodballet did not timely file it. He relied on *Leslie v. Randle*, 296 F.3d 518 (6th Cir. 2002) in reaching this conclusion. Alternatively, the Magistrate Judge recommends that the Court dismiss Goodballet's petition on the merits. Specifically, he found that the state court reasonably applied clearly established federal law in concluding that Goodballet knowingly, intelligently, and voluntarily entered his guilty plea.

Goodballet timely objected to the Magistrate Judge's report on several grounds.

First, he says that the Magistrate Judge wrongly found that he did not timely file his habeas petition. Goodballet makes two arguments in support of this contention. First, he claims that *Leslie* is inapposite. Second, he alleges that the Magistrate Judge erroneously calculated the starting time of the limitations period.

Goodballet next challenges Magistrate Judge Baughman's finding that he knowingly, intelligently, and voluntarily entered a guilty plea. Specifically, he asserts that the Magistrate Judge ignored the fact that the state court violated the due process clause by denying Goodballet's motion to withdraw his guilty plea without conducting an evidentiary hearing. He also argues that he did not voluntarily enter his guilty plea because he says that the prosecutor falsely promised him parole after 3.5 years. Goodballet further contends that under *Layne v. Ohio Adult Parole Auth.*, 97 Ohio St.3d 456, 780 N.E.2d 548 (2002), representations to a defendant as to parole eligibility are enforceable. Finally, Goodballet claims that he entered his plea unknowingly because the trial judge did not tell him that his plea might subject him to sexual predator classification.

The Court now reviews Magistrate Judge Baughman's report and recommendation *de novo*. *Flournoy v. Marshall*, 842 F.2d 875, 875–76 (6th Cir.1988).

## III. Discussion

In his report and recommendation, the Magistrate Judge recommended dismissing Goodballet's petition because he did not timely file it. Alternatively, Magistrate Judge Baughman found that the petition failed on the merits. Goodballet objects to both findings. For the following

---

**1.** In his initial petition for a writ of habeas corpus, Goodballet alleged six grounds for relief. In his subsequent position sheet, however, he only identified two grounds for relief.

reasons, the Court agrees with the Magistrate Judge's recommendation.

### A. Statute of Limitations

Goodballet first challenges the Magistrate Judge's conclusion that his petition is time-barred. He makes two arguments in support of his challenge. First, he says that Magistrate Judge Baughman incorrectly calculated the starting date of the AEDPA limitations period. Next, Goodballet alleges that the Magistrate Judge incorrectly found that his appeal of his sexual predator classification did not toll the statute of limitations period.

For the reasons discussed below, both arguments fail.

### 1. Starting Date of the AEDPA Limitations Period

Goodballet first argues that Magistrate Judge Baughman incorrectly calculated the starting date of the limitations period. The Magistrate Judge concluded that the one year filing deadline began to run on April 24, 1996, the date of the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"). According to Goodballet, the one year clock did not begin to run until January 20, 1999, the date the Ohio Supreme Court declined to hear Goodballet's appeal of the denial of his motion to withdraw.

On April 24, 1996, Congress passed the AEDPA and it became effective on that same day. *Lindh v. Murphy*, 521 U.S. 320, 322, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Among other things, the AEDPA amended 28 U.S.C. § 2244 to include a new one-year limitations period for prisoners filing a habeas corpus petition in the federal courts under 28 U.S.C. § 2254. Under the limitations period provision, a petitioner must file a habeas petition within one year of the later of four events, including the date upon which the judgment becomes final. *See* 28 U.S.C.

§ 2244(d)(1). A judgment becomes final upon "the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). Where a petitioner's conviction becomes final before the effective date of the AEDPA, he has one year from the effective date, or until April 24, 1997, within which to file a petition for writ of habeas corpus. *Searcy v. Carter*, 246 F.3d 515, 517 (6th Cir.2001); *Isham v. Randle*, 226 F.3d 691, 693 (6th Cir.2000). The limitations period is tolled, however, for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

On May 18, 1993, Goodballet pleaded guilty to one count of involuntary manslaughter and one count of tampering with evidence. On that same day, the Columbiana County Court of Common Pleas sentenced Goodballet to concurrent sentences of five to twenty-five years imprisonment on count one and two years imprisonment on count two. Goodballet did not file any direct appeal. Therefore, for purposes of 28 U.S.C. § 2244(d)(1)(A), Goodballet's conviction became final in June 1993, after the expiration of the thirty-day period allowed for direct appeals. *See* Ohio R.App. P. 4(A). Since Goodballet's conviction became final before the enactment of the AEDPA, Goodballet was entitled to the one-year grace period, and the statute of limitations did not begin to run until April 24, 1996. *See Isham,* at 693. Accordingly, Goodballet had until April 24, 1997 to file a timely habeas corpus petition.

Goodballet, however, suggests that his conviction did not become final until after the resolution of his motion to withdraw his plea because he says this motion is part of the direct appeal process in Ohio. Alternatively, he contends that the filing of his motion to withdraw his guilty plea reset

the limitations period. Specifically, Goodballet argues that because no time limitation exists in Ohio for the filing of his motion to withdraw his guilty plea, the entire time from his conviction date until the final resolution of his motion is tolled. He cites *State v. Bush*, 96 Ohio St.3d 235, 773 N.E.2d 522, (2002) for this proposition. Both arguments are incorrect.

■ Goodballet correctly notes that the *Bush* court held that Ohio procedural rules prescribing a filing deadline for postconviction relief petitions do not govern postsentence motions to withdraw guilty pleas. *Bush*, 96 Ohio St.3d at 239, 773 N.E.2d at 526. However, this state procedural ruling does not reset the federal AEDPA filing deadline nor does it alter the final conviction date for federal habeas petition purposes. For purposes of the AEDPA, the judgment becomes final upon "the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). If the conviction did not become final until the highest state court denied a motion to withdraw a guilty plea, the one-year statute of limitations would be meaningless. A petitioner could indefinitely extend the time for seeking habeas relief merely by delaying his motion to file a motion to withdraw his guilty plea. The same would be true if the filing of such a motion reset the limitations period.

Although the Sixth Circuit has not directly addressed whether a motion to withdraw a guilty plea resets the AEDPA limitations period and/or alters the final conviction date, its decisions in two other cases suggest that it does not. First, the Sixth Circuit held that the filing of a delayed appeal tolls the running of the AEDPA one-year limitation but it does not reset the limitations period. *Searcy*, 246 F.3d at 519. A delayed appeal is part of the "direct review" of a case. *Id.* More-over, like a motion to withdraw a guilty plea, a petitioner may file a delayed appeal anytime with the Ohio Supreme Court. *See* Oh. Sup.Ct. R. II, Sec. 2(4)(a). Because the party may file the delayed appeal anytime, effectively delaying the final judgment date, the court decided that filing such an appeal may toll the running of the oneyear limitation, but does not restart the limitation period. *Searcy*, 246 F.3d at 519. Specifically, the court reasoned that allowing the filing of a delayed appeal to restart the AEDPA limitations period:

> 'would effectively eviscerate the AEDPA's statute of limitations. Leave to file a late notice of appeal can be sought at any time, even many years after conviction. If the one-year period of limitations did not begin to run until such an application for leave to appeal was denied, the one-year statute of limitations would be meaningless; merely by delaying his application for leave to file a late notice of appeal, a petitioner could indefinitely extend the time for seeking habeas relief. The statute of limitations provision of the AEDPA would thus be effectively eliminated, a clearly unacceptable result.'

*Id.* (quoting *Raynor v. Dufrain*, 28 F.Supp.2d 896, 898 (S.D.N.Y.1998)).

Likewise, the Sixth Circuit held that an Ohio R.App. P. 26(B) application, though part of the direct appeal process, will not delay the starting of the AEDPA statute of limitations:

> It is important to note that [petitioner] will not be able to benefit from his delay in bringing a Rule 26(B) application to reopen direct appeal by requesting that § 2244(d)(1)(A)'s one-year statute of limitations not begin until after his Rule 26(B) application has run its course through the courts. Instead, the statute of limitations is tolled only for that peri-

od of time in which the Rule 26(B) application is actually pending in the Ohio courts.

*Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir.2000).

Based on the above reasoning, the Court concludes that the filing of a motion to withdraw a guilty plea only tolls the limitations period and does not reset it. It also does not affect the final conviction date for purposes of federal habeas petitions. Accordingly, the statute of limitations began to run on April 24, 1996 and Goodballet had until April 24, 1997 to file a timely habeas petition.

Starting on April 24, 1996, the limitations period ran uninterrupted for 313 days until March 3, 1997. The period stopped running on March 3, 1997 when Goodballet filed his motion to withdraw his guilty plea with the trial court. Under the AEDPA, "a properly filed application for State post-conviction or other collateral review" tolls the one-year period. Goodballet's motion to withdraw his plea is a "properly filed application for State post-conviction or other collateral review." *Thompson v. Chandler,* 36 Fed.Appx. 783, 784 (6th Cir.2002); *cf. Hill v. Randle,* 27 Fed.Appx. 494, 496 (6th Cir.2001). The period began running again on January 20, 1999 when the Ohio Supreme Court dismissed Goodballet's appeal of the denial of his motion to withdraw his plea. As of January 20, 1999, fifty-two days remained in the limitations period. The limitations period then ran for an additional 358 days from January 21, 1999 until January 14, 2000, with the limitations period expiring on March 13, 1999.

Goodballet did not file his habeas petition until January 14, 2000. Accordingly, his petition is time-barred unless the statute of limitations was tolled from January 20, 1999 until January 14, 2000.

### 2. Sexual Predator Proceedings

Beyond his assertions that his motion to withdraw his guilty plea resets the AEDPA limitations period, Goodballet argues that his petition is timely because his sexual predator proceedings tolled the limitations period. During the pendency of his appeal concerning his motion to withdraw his guilty plea, Goodballet also appealed his classification as a sexual predator. He claims that his appeal of his sexual predator classification is a properly filed application for state postconviction relief or other review.

The Ohio Supreme Court dismissed Goodballet's appeal of his classification as a sexual predator on November 24, 1999. Accordingly, if the sexual predator proceedings toll the AEDPA statute of limitations, the statute of limitations clock began running again on November 24, 1999. Goodballet's January 14, 2000, habeas petition would then be timely because the statute would have run to 364 days at the time of the filing. But if the sexual predator proceedings do not toll the AEDPA statute of limitations, the clock begins to run on January 20, 1999, after the Ohio Supreme Court denied Goodballet's appeal of his motion to withdraw his plea. Goodballet's habeas petition would be untimely because 672 days would have passed, 307 days past the 365–day grace period.

In his report and recommendation, the Magistrate Judge concluded that Goodballet's challenge of his sexual predator classification is not an "application for state post-conviction or other collateral review" under § 2254(d)(2). Accordingly, he found that Goodballet's sexual predator proceedings did not toll the statute of limitations. He based this conclusion on the fact that the Sixth Circuit has recognized that the Ohio sexual predator statute is remedial as opposed to punitive in nature. *Leslie,* 296 F.3d at 521–23. Since the sexual predator

hearing attaches no criminal penalty, the Magistrate Judge reasoned that a challenge to sexual predator status does not constitute an attack on the sentence and conviction. Therefore, such a challenge is not a petition for post-conviction relief under the AEDPA.

Goodballet claims that *Leslie* is inapposite. He asserts that the *Leslie* decision only held that petitioners who have completed their prison sentences but who must register as sex offenders do not satisfy the "in custody" requirement of 28 U.S.C. § 2254. Since he is still serving his prison sentence, he says *Leslie* does not apply to him because no dispute exists about whether he is in custody.

■ This argument does not succeed. Although no dispute exists about whether Goodballet is in custody, the underlying reasoning of *Leslie* applies here. Specifically, central to the *Leslie* court's reasoning was the fact that sexual predator adjudication is a collateral consequence of the conviction but is not part of the sentence. *Id.* at 522–23.[2] Since sexual predator classification is a consequence of a conviction and not part of the sentence, the Court concludes that Goodballet's challenge to his sexual predator classification is not a postconviction application for purposes of the AEDPA. Therefore, the Court finds that Goodballet's sexual predator proceedings did not toll the AEDPA limitations period. Accordingly, Goodballet did not timely file his habeas petition.

## B. Contrary to or Unreasonable Application of Established Federal Law

Besides objecting to the untimeliness finding, Goodballet also contends that the Magistrate Judge erroneously concluded that the state court decision did not involve an unreasonable application of established federal law. First, Goodballet argues that he did not voluntarily plead guilty because he says that the prosecutor falsely promised him parole after 3.5 years. He also says that the Magistrate Judge ignored the fact that the state court violated the due process clause by denying Goodballet's motion to withdraw his guilty plea without conducting an evidentiary hearing. Finally, Goodballet argues that he entered his plea unknowingly because the trial judge did not tell him that his plea might subject him to sexual predator classification.

Assuming *arguendo* that Goodballet had timely filed his habeas petition, for the reasons that follow, his claim still fails on the merits.

### 1. AEDPA Standards

Pursuant to the AEDPA, federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). *See also Miller v. Francis,* 269 F.3d 609 (6th Cir.2001).

Both the "contrary to" and the "unreasonable application" clauses have independent meaning. *Williams v. Taylor,* 529 U.S. 362, 403, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision of the state court is

---

**2.** The Supreme Court indirectly supported this conclusion when it recently concluded that the Alaska sexual offender statute, which is similar to the Ohio statute, is nonpunitive in nature. *Smith v. Doe,* —— U.S. ——, —— ——, 123 S.Ct. 1140, 1145–57, 155 L.Ed.2d 164 (2003).

"contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 413, 120 S.Ct. 1495.

A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S.Ct. 1495. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410, 120 S.Ct. at 1522 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410, 120 S.Ct. 1495.

2. Alleged Breach of Promise of Parole

Goodballet claims that his plea was not voluntary because he says that the prosecutor breached his promise to parole Goodballet after 3.5 years.

■ The *Brady v. United States* standard governs challenges to guilty pleas.

397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Under this standard, a plea is valid if it is voluntary, knowing, and intelligent. *Id.* at 755–56, 90 S.Ct. 1463. A voluntary plea is one that a defendant makes free of threats or unauthorized promises. *Id.*

In denying his motion to withdraw his guilty plea, the trial court examined the record of the plea hearing. Based on this review, it found that at his plea hearing, the judge clearly informed Goodballet that he was entering a guilty plea and that the court would sentence him to a term of at least five years actual time. The court also noted that Goodballet expressly denied at the hearing that anyone had made promises to him other than those stated in the plea agreement.

Despite his express denial at the hearing, Goodballet now claims that the prosecutor made unauthorized promises about his parole. He offers Mackall's affidavit in support of this assertion.

The affidavit does not support Goodballet's claim for several reasons. First, the affidavit contains multiple hearsay. Therefore, it is inadmissible. Moreover, even considering the impermissible hearsay statements, the affidavit fails to show how any parole representations that the state made were wrong. In the affidavit, Mackall states that Amy Hissom, Goodballet's then wife, said that "she was informed by the county prosecutor that Clifford Goodballet would serve *approximately* 3½ years before his release if he entered pleas of guilty." (Emphasis added). At the time of Goodballet's sentencing in 1993, an inmate was *eligible* for parole after serving 70% of his sentence if he followed the prison's rules during his incarceration.[3]

3. Specifically, Ohio Rev.Code Ann. § 2967.13 stated, "A prisoner serving a sentence of imprisonment for a felony for which an indefi-

nite term of imprisonment is imposed becomes eligible for parole at the expiration of his minimum term, diminished as provided in

Therefore, if Goodballet abided by the prison rules, he would be eligible for parole after serving 3.5 years.

Additionally, even if the prosecutor had told Goodballet that the prison would actually release him in 3.5 years, Goodballet could not reasonably rely on this representation. The parole board, not the prosecutor makes the parole determination. *See* Ohio Rev.Code Ann. § 2967.02. Further, Goodballet's reliance on *Layne v. Ohio Adult Parole Authority*, 97 Ohio St.3d 456, 780 N.E.2d 548, for the proposition that representations to a defendant as to parole eligibility are enforceable is misplaced. In *Layne*, the parole board had assigned inmates offense category scores based on the alleged underlying criminal activity rather than on the offenses of which the state had convicted the inmate. *Id.* at 462, 780 N.E.2d 548. The offense category scores determined parole eligibility under Ohio's new parole system. *Id.* Often, the parole board considered underlying offenses that the state had agreed to drop as part of a plea agreement with the inmate. *Id.* at 463, 780 N.E.2d 548. The *Layne* court held that "in any parole determination involving indeterminate sentencing, the [Adult Parole Authority] APA must assign an inmate the offense category score that corresponds to the offense or offenses of conviction." *Id.* at 464, 780 N.E.2d 548.

Goodballet, however, does not allege that the plea agreement included the prosecutor's alleged parole promises. Nor does he allege that the parole board improperly considered offenses other than the two of which the trial court convicted

him of in making its parole assessment. Therefore, *Layne* is inappostite.

■ Accordingly, the Court concludes that the state reasonably applied clearly established federal law in deciding that Goodballet made his plea voluntarily, free from any promises outside the plea agreement.

### 3. Failure to Conduct Evidentiary Hearing

Goodballet next argues that the state court violated his due process rights when it denied his motion to withdraw his guilty plea without conducting an evidentiary hearing. According to Goodballet, the court denied him fundamental fairness because he says it relied on its recollection of the disputed fact about the prosecutor's alleged promises.

■ This argument fails to persuade. First, the state court did not rely on its recollection. It based its decision on evidence in the record. Based on this evidence of the plea collogue, Goodballet clearly stated that he did not rely on any unauthorized promises in making his guilty plea. Further, as discussed above, even if the prosecutor did represent to Goodballet that he would serve approximately 3.5 years prison time, Goodballet fails to show that this representation was incorrect. Under the relevant parole statute at the time, Goodballet was eligible for parole in 3.5 years. Further, as discussed above, Goodballet does not show that it was reasonable for him to rely on such a representation.

sections 2967.19, 2967.193, 5145.11, and 5145.12 of the Revised Code." Ohio Rev. Cod. Ann. § 2967.13 (1992). Ohio Rev.Code Ann § 2967.19 stated, "Except as provided in division (F) of this section, a person confined in a state penal or reformatory institution is enti-

tled to a deduction from his minimum or definite sentence of thirty per cent of the sentence, prorated for each month of the sentence during which he faithfully has observed the rules of the institution." Ohio Rev.Code Ann § 2967.19 (1992).

4. Failure to Advise of Possible Sexual Predator Adjudication

Finally, Goodballet argues that his guilty plea was unconstitutional because the trial court did not inform him that his plea might subject him to sexual offender classification.

Two Supreme Court cases, *Brady* and *Libretti v. United States*, 516 U.S. 29, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995), govern this claim. Under the *Brady* standard, a guilty plea is valid if made voluntarily, knowingly, and "with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 742, 90 S.Ct. 1463. The *Libretti* court recognized a distinction between collateral and direct consequences. Specifically, it held that a trial court does not have to advise a defendant that a plea of guilty will result in waiver of his statutory right to have a jury determination of criminal forfeitability. *Libretti*, 516 U.S. at 50. The court reasoned that this right was not the type of constitutional right that Fed.R.Crim.P. 11 required a judge to inform a defendant about to ensure that a guilty plea is valid. *Id.*

 Additionally, the Sixth Circuit has held a "defendant need only be aware of the direct consequences of the plea . . . the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir.1994). Sexual predator adjudication is a remedial collateral consequence rather than punitive. *Leslie*, 296 F.3d at 522–23; *cf. Smith*, — U.S. ——, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (holding that Alaska sexual predator statute, which is similar to the Ohio statute, is nonpunitive in nature). Therefore, the state court had no obligation to tell Goodballet that sexual predator classification was a potential consequence of his guilty plea. Conse-quently, the state court reasonably applied clearly established federal law when it concluded that the failure to tell Goodballet that he could be subject to sexual predator classification did not make his plea invalid.

In sum, the Court finds that Goodballet did not timely file his habeas petition. Alternatively, even if Goodballet had timely filed the petition, the Court concludes that it fails because Goodballet does not show that the state court decision is an unreasonable application of clearly established federal law.

IV.   Conclusion

For the reasons discussed above, the Court denies Goodballet's petition for habeas corpus.

IT IS SO ORDERED.